# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MICHAEL NIEMIS, Individually, and on
Behalf of All Others Similarly Situated,

    Plaintiff,

v.                                                     Case No. 8:20-cv-02956-WFJ-JSS

CCC INFORMATION SERVICES INC.,

    Defendant.

_____

## Uniform Case Management Report

The goal of this case management report is to "secure the just, speedy, and inexpensive determination of" the action. *See* Fed. R. Civ. P. 1. Under Local Rule 3.02(a)(2), this case management report should be used in all civil cases except those described in Local Rule 3.02(d). Individual judges may have additional case management preferences that can be found under each judge's name on the Court's website, flmd.uscourts.gov/judges/all.

**1. Date and Attendees**

> The parties may conduct the planning conference "in person, by telephone, or by comparable means[.]" *See* Local Rule 3.02(a)(1).

The parties conducted the planning conference on 2/3/2021. Hank Bates and Lee Lowther attended the conference on behalf of Plaintiff Michael Niemis. George Chipev attended the conference on behalf of Defendant CCC Information Services Inc. The parties continued discussions via email.

**2. Deadlines and Dates**

Plaintiff's Position:

Plaintiff requests these deadlines and dates:

| Action or Event | Date |
|---|---:|
| Deadline for providing mandatory initial disclosures | 3/8/2021 |
| Deadline for moving to join a party | 4/19/2021 |
| Deadline for Plaintiff to move for class certification and to disclose experts in support of motion for class certification | 10/15/2021 |

| Deadline for Defendant to oppose class certification and to disclose experts in opposition to class certification | 12/17/2021 |
|---|---|
| Deadline for Plaintiff to reply in support of motion for class certification | 2/11/2022 |
| Deadline for participating in mediation | 4/1/2022 |
| Plaintiff's deadline for disclosing any expert report | 5/1/2022 |
| Defendant's deadline for disclosing any expert report | 6/1/2022 |
| Deadline for disclosing any rebuttal expert report | 7/1/2022 |
| Deadline for completing discovery and filing any motion to compel discovery | 8/1/2022 |
| Deadline for filing any dispositive and Daubert motion | 9/1/2022 |
| Date of the final pretrial meeting. See Local Rule 3.06(a). | 1/17/2023 |
| Deadline for filing the joint final pretrial statement, any motion in limine, proposed jury instructions, and verdict form. | 1/24/2023 |
| Date of the final pretrial conference | 2/1/2023 |
| Month and year of the trial term | 2/1/2023 |

Plaintiff responds as follows to the issues raised below by Defendant: Defendant's Motion to Dismiss seeks to dismiss only one of the two counts; therefore, even if it were meritorious, it would provide no grounds for delaying discovery. More generally, a stay of discovery is not appropriate, for the reasons set forth separately in Plaintiff's Opposition to Defendant's Motion to Stay (to be filed shortly on February 12, 2021). Consistent with the Uniform Case Management Report, Plaintiff has proposed deadlines and dates through trial. Plaintiff recognizes, as Defendant notes, that the post-certification dates and deadlines may need to be revisited after the Court rules on the motion for class certification. Accordingly, Plaintiff is amenable to conferring with Defendant at that time.

Defendant's Position:

CCC's position is that the deadlines and dates should begin following (1) the Court's disposition of CCC's pending motions to dismiss and to compel appraisal and motion to stay the case, and (2) the lifting of any stay of discovery that may be ordered, whichever is later. CCC further proposes that discovery first focus on issues related to class certification so that the Court

may reach the class decision at an early practicable time, consistent with Federal Rule of Civil Procedure 23(c)(1)(A). Thus, priority should be given in discovery to the requirement of Federal Rule of Civil Procedure 23, issues regarding class certification, and those merits issues (if any) that impact class certification. Thus, CCC proposes that the Court set a schedule only through a decision on class certification at this time. CCC agrees to confer with Plaintiff in good faith to resolve any disputes concerning the appropriate timing or focus of discovery. Once the Court has rendered its decision on the propriety of class certification, CCC proposes that the parties conduct an additional meet and confer within 14 days of the Court's decision on class certification and submit a supplemental Case Management Report that will propose dates for the completion of any remaining merits-related fact discovery, the filing of dispositive motions, the final pretrial conference, and trial, as well as set forth the anticipated length of trial. CCC further proposes that, once the supplemental report is filed, the Court hold a status conference to consider the supplemental report and to determine how to proceed with the remainder of the case.

In accordance with the foregoing, CCC proposes the following schedule through class certification:

| **Event** | **Date** |
|---|---|
| Exchange initial disclosures | 21 days after the Court rules on the motion to compel appraisal or dismiss, and motion to stay discovery, or lifts any stay of discovery that may be ordered, whichever is later. |
| Deadline for moving to join a party, *see* Fed. R. Civ. P. 14, 19, and 20, or amend the pleadings, *see* Fed. R. Civ. P. 15(a). | 28 days after the Court rules on the motion to compel appraisal or dismiss, and motion to stay discovery, or lifts any stay of discovery that may be ordered, whichever is later. |
| Discovery on class certification issues begins | Discovery should begin 30 days after the Court rules on the motion to compel appraisal or dismiss, and motion to stay discovery, or lifts any stay of discovery that may be ordered, whichever is later. |

| | |
|---|---|
| Close of class certification fact discovery | 12 months after the Court rules on the motion to compel appraisal or dismiss, and motion to stay discovery, or lifts any stay of discovery that may be ordered, whichever is later. |
| Deadline for Plaintiff to file motion for class certification | 13 months after the Court rules on the motion to compel appraisal or dismiss, and motion to stay discovery, or lifts any stay of discovery that may be ordered, whichever is later. |
| Deadline for Plaintiff to disclose experts in support of motion for class certification | 13 months after the Court rules on the motion to compel appraisal or dismiss, and motion to stay discovery, or lifts any stay of discovery that may be ordered, whichever is later. |
| Deadline for CCC to file oppositions to class certification | 3 months after the filing of Plaintiff's Motion for Class Certification |
| Deadline for CCC to disclose experts in opposition to class certification | 3 months after the filing of Plaintiff's Motion for Class Certification |
| Deadline for CCC to file *Daubert* motions regarding experts disclosed in support of motion for class certification | 3 months after the filing of Plaintiff's Motion for Class Certification |
| Deadline for Plaintiff's Reply and any expert rebuttal in support of class certification | 45 days after the filing of CCC's Opposition to Class Certification |
| Deadline for Plaintiff to file *Daubert* motions regarding experts disclosed in opposition to class certification | 45 days after the filing of CCC's Opposition to Class Certification |
| Deadline for Plaintiff to file oppositions to CCC's *Daubert* motions | 45 days after the filing of CCC's *Daubert* motions |
| Deadline for CCC's Sur-Replies and expert sur-rebuttal in opposition to class certification, if any | 2 weeks after the filing of Plaintiff's Reply in support of class certification |
| Deadline for CCC to file replies in support of CCC's *Daubert* motions | 2 weeks after the filing of Plaintiff's Opposition to *Daubert* motions |

| Close of expert discovery on class certification | 2 weeks after the filing of Plaintiff's Reply in support of class certification |
|---|---|
| Deadline for CCC to file oppositions to Plaintiff's *Daubert* motions | 45 days after the filing of Plaintiff's *Daubert* motions |
| Evidentiary hearing on class certification | TBD |
| Deadline for Plaintiff to file replies in support of Plaintiff's *Daubert* motions | 2 weeks after the filing of CCC's Oppositions to *Daubert* motions |
| Submission of Supplemental Case Management Report | 2 weeks after the Court's ruling on Plaintiff's Motion for Class Certification |
| Deadline for participating in mediation. *See* Local Rules, ch. 4. | 2 months after Court's ruling on Plaintiff's Motion for Class Certification |

The trial will last approximately enter number days and be

☒ jury.

☐ non-jury.

Plaintiff estimates that the jury trial will last approximately 5 – 8 days.

Consistent with its foregoing position, CCC believes that it would be premature to set a trial date. CCC further believes that it cannot predict how long a trial would last until the Court issues a ruling on a class certification motion, if any.

**3. Description of the Action**

<u>Corporal Niemis's Statement</u>

Cpl. Niemis – like every member of the proposed class of Garrison insureds -- was paid less than the actual cash value he was entitled to under his insurance policy because CCC's "Market Valuation Reports" systematically and deceptively thumb the scale against the insured. Following a wreck in May 2020, Cpl. Niemis made a claim on his insurance policy with Garrison, which declared his vehicle a total loss. To determine the actual cash value he was entitled to under

5

his policy, Garrison, as is its routine practices, relied upon a market valuation report from CCC. These reports purport to compare the loss vehicle to comparable vehicles in the insured's market. Characteristics of each comparable vehicle—such as trim level, options, and mileage—are compared with the loss vehicle and any differences are documented in the report. CCC then makes price adjustments to the list price of each comparable vehicle to account for any documented differences between it and the loss vehicle.

Using a comparative methodology, it is proper to make dollar adjustments based on examined and supported differences between the loss and comparable vehicles. But CCC does not stop with documented, supported adjustments. It deceptively thumbs the scale by applying a blanket value deduction based on a presumption, with no inspection, that every comparable vehicle is in some undefined condition better than "good."

Cpl. Niemis's experience is typical of CCC's improper conduct. Each loss vehicle undergoes a physical inspection to determine its condition at the time of loss. Each of the seven components examined for Cpl. Niemis's loss vehicle was found to be in "good" condition. On the comparable side of the ledger, CCC represents that it also "sets that comparable vehicle to Good condition." However, this is not true. In truth, CCC assumes—without examination, documentation, or other support—that each comparable vehicle is in an undefined condition better than "good." For Cpl. Niemis, CCC assumed that each comparable vehicle was in an undefined condition $2,585 better than "good."

Moreover, CCC's undocumented assumption is contrary to standard appraisal practices. When determining actual cash value using a comparative methodology, an appraiser cannot simply assume a comparable vehicle is in better condition than the loss vehicle. If such an adjustment is to be made, it must be made only after physical inspections of the loss and comparable vehicles.

6

In other words, the comparative methodology requires an actual *comparison* of the vehicle traits being adjusted. Because CCC performed no such comparison, the condition adjustment it used was unfounded, was deceptive, and should not have been used. CCC's use of this unfounded adjustment caused Cpl. Niemis to receive $2,585 less than actual cash value for his loss vehicle.

As CCC knows, Garrison relies on CCC's valuations as the actual cash value its insureds are entitled to under their policies and offers its insureds as the actual cash value the amount listed in the CCC reports. Thus, CCC's systemic use of deceptive and unfounded condition adjustments caused Garrison to settle its insureds' total-loss claims for less than the actual cash value they are entitled to under their insurance policies. Moreover, Garrison made a contract with CCC for the benefit of its insureds—specifically, for the purpose of ensuring Garrison's insureds received the actual cash value to which they were entitled. CCC's systemic use of unfounded and deceptive condition adjustments breached the Garrison-CCC contract, to which Cpl. Niemis and members of the class were intended beneficiaries.

Based on its systematic use of unfounded and deceptive condition adjustments, CCC caused each class member to receive less than the actual cash value of their loss vehicles in the amount of the condition adjustment. Thus, common issues will predominate over individual ones, and this case is well-suited for class treatment.

CCC's Statement:

CCC denies all liability to Plaintiff and the purported class and denies that class certification is appropriate. Further, Plaintiff's litigation against CCC is premature because Plaintiff's insurance policy with Garrison (the "Policy") gives either party (and CCC through equitable estoppel) the right to demand an appraisal when the amount of total loss insurance is in dispute, and that process has not yet been completed. For that reason, CCC filed a motion to

dismiss and to compel appraisal. Dkt. No. 22. CCC has also filed a motion to stay discovery pending resolution of the motion to dismiss and compel appraisal. Dkt. No. 23.

Plaintiff's Complaint also fails on its merits against CCC. Plaintiff asserts causes of action against CCC for tortious interference with a contract and third-party beneficiary breach of contract. But CCC and Plaintiff have no contract, and the contract between CCC and Garrison does not reference Plaintiff, or any other Garrison insured persons. Rather, Plaintiff invokes his Policy as the basis for his claim for relief, and each individual count against CCC references or presumes a breach of the Policy. Moreover, Plaintiff has not sought relief against Garrison, the only party with a contractual relationship with Plaintiff. In short, Plaintiff has no claims against CCC under any theory.

Regardless, CCC did not tortiously interfere with Plaintiff's Policy. As described in the CCC valuation report Garrison provided to Plaintiff, CCC selects comparable vehicles that are currently or recently available for sale in or near the zip code of the loss vehicle, including both vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. Because no two vehicles are identical, CCC makes positive and negative equating adjustments to the selected comparable vehicles in order to more closely duplicate the specific characteristics of the loss vehicles as reported by Garrison. CCC also makes adjustments, both positive and negative, to account for differences in mileage, condition, options, trim level, and other factors that impact vehicle value. The condition adjustment of which Plaintiff complains is in actuality a two-step equating adjustment that first sets the comparable vehicles to a common condition baseline level selected by Garrison, and then makes specific adjustments from this baseline level to various components of the loss vehicle as determined by Garrison's evaluation of the loss vehicle. There is nothing unfounded or deceptive about this adjustment.

Finally, Plaintiff's claims against CCC require a determination of the requirements of the Policy, and whether an underpayment occurred can be determined only by evaluating the amount to which Plaintiff was entitled under the Policy and whether Garrison breached the Policy. These quintessentially individualized issues cannot be determined on a class-wide basis.

4. **Disclosure Statement**

   ☒ The parties have filed their disclosure statement as required by Federal Rule of Civil Procedure 7.1 and Local Rule 3.03.

5. **Related Action**

   ☒ The parties acknowledge their continuing duty under Local Rule 1.07(c) to notify the judge of a related action pending in the Middle District or elsewhere by filing a "Notice of a Related Action." No notice need be filed if there are no related actions as defined by the rule.

6. **Consent to a Magistrate Judge**

   > "A United States magistrate judge in the Middle District can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." Local Rule 1.02(a). With the parties' consent, a district judge can refer any civil matter to a magistrate judge for any or all proceedings, including a non-jury or jury trial. 28 U.S.C. § 636(c).
   >
   > The Court asks the parties and counsel to consider the benefits to the parties and the Court of consenting to proceed before a magistrate judge. Consent can provide the parties certainty and flexibility in scheduling. Consent is voluntary, and a party for any reason can decide not to consent and continue before the district judge without adverse consequences. *See* Fed. R. Civ. P. 73(b)(2).

   ☐ The parties do consent and file with this case management report a completed Form AO 85 "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," which is available on the Court's website under "Forms."

   ☒ The parties do not consent.

7. **Preliminary Pretrial Conference**

   ☐ The parties do not request a preliminary pretrial conference before the Court enters a scheduling order.

   ☒ The parties do request a preliminary pretrial conference, and the parties want to discuss this action's Track 2 designation and the parties' proposed schedules for this matter.

8. **Discovery Practice**

   > The parties should read the Middle District Discovery Handbook, available on the Court's website at flmd.uscourts.gov/civil-discovery-handbook, to understand discovery practice in this District.

   ☒ The parties confirm they will comply with their duty to confer with the opposing party in a good faith effort to resolve any discovery dispute before filing a motion. *See* Local Rule 3.01(g); *Middle District Discovery* (2021) at § I.A.2.

9. **Discovery Plan**

   The parties submit the following discovery plan under Rule 26(f)(2):

   A.  The parties agree to the timing, form, or requirement for disclosures under Rule 26(a):

   ☐ Yes.
   ☒ No; instead, the parties agree to these changes: Plaintiffs propose that the parties will complete their initial disclosures by March 8, 2021. CCC proposes to exchange initial disclosures 21 days after the Court rules on the pending motions to dismiss and compel appraisal and to stay, or lifts any stay on discovery the Court may decide to grant, whichever is later.

   B.  Discovery may be needed on these subjects:

   Plaintiff's discovery will include the following subjects:

   - Exemplars of Defendant's market valuation report templates and any related disclosure or explanatory documents during the class period;

   - Defendant's contracts with Garrison regarding its services for valuing total loss automobile claims;

   - Defendant's and third-party Garrison's documents and databases relevant to identification of class members, class size, and class damages, including those documents and databases relied upon by Defendant in its Notice of Removal to calculate the number of insureds who were impacted by negative condition adjustments (more than 11,000) and the aggregate total of those condition adjustments ($28,538,400);

   - Defendant's policies, practices, and training materials related to calculating "actual cash value" and application of condition adjustments during the Class Period, and

   - Defendant's documents explaining, justifying or addressing (a) its practice of presuming without inspection that all comparable vehicles are in superior condition to the loss vehicle, (b) applying blanket condition adjustments to the value of all

comparable vehicles, and (c) calculating the amount of the condition adjustments applied during the Class Period.

Defendant's discovery will include the following subjects:

- Issues related to class certification and any overlapping merits issues;
- Plaintiff's loss vehicle and other vehicles owned by Plaintiff;
- Plaintiff's policy with and experience as an insured of Garrison.

C. Discovery should be conducted in phases:

☒ No.
☐ Yes; describe the suggested phases.

D. Are there issues about disclosure, discovery, or preservation of electronically stored information?

☒ No.
☐ Yes; describe the issue(s).

E. ☒ The parties have considered privilege and work-product issues, including whether to ask the Court to include any agreement in an order under Federal Rule of Evidence 502(d).

F. The parties stipulate to changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure and Local Rule 3.04 or other limitations:

☒ No.
☐ Yes; describe the stipulation.

10. **Request for Special Handling**

☒ The parties do not request special handling.

☐ The parties request special handling. Specifically, describe requested special handling.

☐ Enter party's name unilaterally requests special handling. Specifically, describe requested special handling.

11. **Certification of familiarity with the Local Rules**

☒ The parties certify that they have read and are familiar with the Court's Local Rules.

11

## 12. Signatures

Dated: February 9, 20201

/s/ *Lee Lowther* (signed by filing lawyer with permission of non-filing lawyer)

Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
Tiffany Oldham (*pro hac vice*)
toldham@cbplaw.com
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Jake Windley (*pro hac vice*)
jwindley@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Caitlyn Pritchard Miller, Esq.
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449
Email: cmiller@awkolaw.com

*Attorneys for Plaintiff Michael Niemis*

Respectfully submitted,

*/s/ George C. Chipev**

George C. Chipev (*pro hac vice*)
george.chipev@lw.com
Marguerite M. Sullivan (*pro hac vice*)
marguerite.sullivan@lw.com
Jason R. Burt (*pro hac vice*)
jason.burt@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Steven J. Pacini (*pro hac vice*)
steven.pacini@lw.com
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001

*/s/ Joseph H. Varner*

Joseph H. Varner, III
Florida Bar No. 394904
HOLLAND & KNIGHT LLP
P O Box 1288
Tampa FL 33601-1288
Telephone: 813-227-8500 / Fax: 813-229-0134
joe.varner@hklaw.com
Secondary: gloria.mcknight@hklaw.com

*Attorneys for CCC Information Services Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on February 9, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all counsel of record.

                                    */s/ George C. Chipev*
                                    *Attorney for Defendant CCC Information Services Inc.*