# EXHIBIT B



Member Name: MICHAEL T NIEMIS
Member Number: ████████████
Loss Report Number: 10
Date of Loss: 05-07-2020
Company: GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY

# Texas Unsworn Declaration

My name is <u>Mary Ann Rice,</u> my date of birth is <u>March 18, 1960</u>, and my work address is 9800 Fredericksburg Road, San Antonio, Texas 78288, and United States of America.

I declare under penalty of perjury that the foregoing and attached (policy) is a true and correct copy.

<u>E-SIGNED by Mary Ann Rice
on 2021-01-07 21:55:42 GMT</u>
Signature

Executed in Bexar County, State of Texas, on <u>January 07, 2021</u>.
(Date)

0901119cab00c687




## AUTOMOBILE POLICY PACKET

MICHAEL T NIEMIS

GAR

POLICY PERIOD:    EFFECTIVE DEC 09 2019 TO JUN 09 2020

# IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

Check your vehicle for a safety recall today! Visit www.usaa.com/autorecall to learn more.

TEXTING & DRIVING … It Can Wait! Join USAA in the movement against distracted driving by going to http://itcanwait.usaa.com to watch powerful videos and take the pledge to not text and drive!

This is not a bill.        Any premium charge or change for this policy will be reflected on your next regular monthly statement. Your current billing statement should still be paid by the due date indicated.

**To receive this document and others electronically, or manage your Auto Policy online, go to usaa.com.**

For U.S. calls:   Policy Service (800) 531−8111. Claims (800) 531−8222.

ACS1

49708−0406
Garrison P&C 00000002

0901119cab00c687

USAA Confidential

**THIS PAGE INTENTIONALLY LEFT BLANK**

0901119cab00c687

USAA Confidential

# GARRISON PROPERTY and CASUALTY INSURANCE COMPANY
(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288

**USAA®**

FLORIDA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | 11 | 13 | | Veh | | **POLICY NUMBER** |
|-------|----|----|--|-----|--|-------------------|
| FL | 451 | 451 | | Terr | | |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE DEC 09 2019 TO JUN 09 2020**

OPERATORS
01 MICHAEL T NIEMIS

**Named Insured and Address**

MICHAEL T NIEMIS

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK-SCHOOL Miles One Way | Days Per Week |
|-----|------|-----------|-------|-----------|----------------|----------------------|-----|----------|---------|------|
| 11 | 14 | LANROVER | EVOQUE | 4D | 2500 | | | P | | |
| 13 | 16 | JAGUAR | F-TYPE R | 2 DOOR | 2000 | | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 11 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 13 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY      EA PER $  50,000 | | | | | | | | |
| EA ACC $ 100,000 | | 194.01 | | 279.94 | | | | |
| PROPERTY DAMAGE EA ACC $  50,000 | | 74.58 | | 112.63 | | | | |
| PART B - PERSONAL INJURY PROTECTION | | | | | | | | |
| MAXIMUM BENEFITS          $10,000 | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | | | | | | | | |
| WORK LOSS N/A FOR NAMED INSD | | | | | | | | |
| AND RESIDENT RELATIVES | D 500 | 79.68 | D 500 | 107.67 | | | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS      ACV LESS | D1000 | 43.67 | D1000 | 157.27 | | | | |
| COLLISION LOSS          ACV LESS | D1000 | 144.77 | D1000 | 395.98 | | | | |
| VEHICLE TOTAL PREMIUM | | 536.71 | | 1053.49 | | | | |

```
--------------------------------ADJUSTMENT REASON-------------------------------
CHANGE IN OPERATOR STATUS OP 01  ADDED VEH 13 | CHANGE IN ANNUAL MILEAGE VEH 11

       REVISED 6 MONTH PREMIUM...$ 1590.20  6 MONTH INCREASE...$  990.79
  PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

         ADDITIONAL MESSAGE(S) - SEE FOLLOWING PAGE(S)

ENDORSEMENTS: ADDED 12-09-19 -  NONE
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)-  ACCFOR(01)  A402FL(02)  RSGPFL(01)
    5100FL(02)
```

E4  1

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas, on this date   OCTOBER 28, 2019.

COUNTERSIGNED BY

Deneen Donnley, Secretary   S. Wayne Peacock, President

Garrison P&C 00000004

MARIA ELENA MCALEXANDER

5000 R 05-12
51492-05-12

USAA Confidential

0901119cab00c687



**GARRISON PROPERTY and CASUALTY INSURANCE COMPANY**
(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288

FLORIDA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | | Veh | POLICY NUMBER |
|---|---|---|---|
| FL | | Terr | |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE DEC 09 2019 TO JUN 09 2020**

**Named Insured and Address**

MICHAEL T NIEMIS

### Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE * Miles One Way | WORK/SCHOOL Days Per Week |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. |* W/C=Work/School; B=Business; F=Farm; P=Pleasure

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR: | | | | | | | | |
| VEH 11 - MEDICAL PAYMENTS, UNINSURED MOTORIST, RENTAL REIMBURSEMENT, TOWING AND LABOR | | | | | | | | |
| VEH 13 - MEDICAL PAYMENTS, UNINSURED MOTORIST, RENTAL REIMBURSEMENT, TOWING AND LABOR | | | | | | | | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY on this date OCTOBER 28, 2019

Deneen Donnley, Secretary   S. Wayne Peacock, President
**Garrison P&C 00000005**

**5000 R 05-12**
51492-05-12

MARIA ELENA MCALEXANDER

USAA Confidential

0901119cab00c687



**SUPPLEMENTAL INFORMATION**

**EFFECTIVE DEC 09 2019 TO JUN 09 2020**

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or **senior citizen** status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 11
    ANNUAL MILEAGE DISCOUNT               -$    94.11
    ANTI-LOCK BRAKE DISCOUNT             -$    13.65
    ANTI-THEFT DISCOUNT                  -$     4.26
    DAYTIME RUNNING LIGHTS DISCOUNT      -$     3.96
    MULTI-CAR DISCOUNT                   -$    51.06
    PASSIVE RESTRAINT DISCOUNT           -$    12.53
    PREMIER DRIVER LEVEL DISCOUNT        -$   124.47

VEHICLE 13
    ANNUAL MILEAGE DISCOUNT              -$   216.83
    ANTI-LOCK BRAKE DISCOUNT             -$    26.11
    ANTI-THEFT DISCOUNT                  -$    16.88
    DAYTIME RUNNING LIGHTS DISCOUNT      -$    11.73
    MULTI-CAR DISCOUNT                   -$   101.82
    PASSIVE RESTRAINT DISCOUNT           -$    17.47
    PREMIER DRIVER LEVEL DISCOUNT        -$   238.19
```

# ACCIDENT FORGIVENESS

When a premium for Accident Forgiveness is shown on the Declarations:

1. If you or any family member shown as an operator on the Declarations:

    a. Is involved in an at-fault accident that occurs after the effective date of this endorsement, we will waive any premium increase under this policy that would otherwise be applied for the first such at-fault accident.

    b. Was involved in an at-fault accident forgiven in a policy written by us or one of our affiliates and such operator was removed from that policy and added to this policy without any gap in coverage, we will continue to forgive the accident on this policy for the remainder of the period of time the premium increase would have occurred under this policy if there are no other at-fault accidents for which premium is waived under this policy.

    We will waive the premium increase for only one at-fault accident per policy period, regardless of the number of operators shown on the Declarations.

2. We will waive the premium increase for the at-fault accident in Section I for the period of time during which:

    a. This endorsement is in effect; and

    b. A premium increase for such at-fault accident would have otherwise applied to this policy.

The Accident Forgiveness Endorsement must remain in effect during any renewal period of this policy over the full accident forgiveness period for the premium increase waiver to remain in effect.

Copyright, USAA 2009. All rights reserved.

ACCFOR(01) 3-09

91228-0309
Page 1 of 1

Garrison P&C 00000007

0901119cab00c687

USAA Confidential

# AMENDATORY ENDORSEMENT

The coverage provided by this Endorsement is subject to all the provisions of the policy and amendments except as they are modified as follows.

## PART D – PHYSICAL DAMAGE COVERAGE

**DEFINITIONS**

**F.** **"Repair."** is replaced in its entirety by the following:

**F.** **"Repair."**

    1. **"Repair"** means restoring the damaged property to its pre-**loss** operational safety, function and appearance. This may include the replacement of component parts. As it relates to windshield damage, **repair** includes but is not limited to the replacement of the entire windshield and all related components.

    2. **Repair** does not require:

        a. A return to the pre-**loss** market value of the property;

        b. Restoration, alteration or replacement of undamaged property, unless such is needed for operational safety of the vehicle: or

        c. Rekeying of locks following theft or misplacement of keys.

**G.** **"Your covered auto"** is deleted in its entirety and replaced by the following:

**G.** **"Windshield estimate"** means the amount **you** are notified of, either verbally or in writing, when **you** report the **loss** to **us**, that **we** calculate for **repair** of the windshield to **your covered auto** as reflected in the USAA Auto Glass Network Agreement by any **windshield network provider** who, on the date the **loss** is reported by **you** to **us**:

    1. has a facility located within ten miles of the repair location requested by **you**; or

    2. is willing to provide a mobile **repair** to **your covered auto** at the repair location requested by **you**; or

    3. if 1. or 2. do not apply, then the amount **we** approve and notify **you** of when **you** report the **loss** to **us**.

The following **DEFINITIONS** are added.

**H.** **"Windshield network provider"** means any person or entity providing windshield **repair** who is part of the USAA Auto Glass Network on the date the **loss** is reported by **you** to **us**.

**I.** **"Your covered Auto"** as used in this part includes:

    1. **Custom equipment** up to a maximum of $5,000 in or on **your covered auto**.

    2. A **nonowned vehicle**. If there is a **loss** to a **nonowned vehicle**, **we** will provide the broadest coverage shown on the Declarations.

**INSURING AGREEMENT**

Paragraph A. is replaced in its entirety by the following:

A. Comprehensive Coverage (excluding **collision**).

    1. Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property

0901119cab00c687

USAA Confidential

contained in **your covered auto**, minus any applicable deductible shown on the Declarations. However, **we** will pay for the cost to **repair** the damaged windshield on **your covered auto** without a deductible.

2. Transportation expenses. **We** will also pay:

   a. The reasonable amount for transportation expenses incurred by **you** or any **family member**, but no more than the cost of renting an Economy Class vehicle, as defined under Rental Reimbursement Coverage. This applies only in the event of a total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not **repairable**, up to seven days after **we** have made a settlement offer.

   b. If Rental Reimbursement Coverage is afforded, the vehicle class for transportation expenses is the vehicle class shown on the Declarations for Rental Reimbursement for that vehicle.

Paragraph C. is replaced in its entirety by the following:

C. Rental Reimbursement Coverage (for **loss** other than total theft).

   1. **We** will reimburse **you** for expenses **you** or any **family member** incurs to rent a substitute for **your covered auto**. This coverage applies only if:

      a. **Your covered auto** is withdrawn from use due to a **loss**, other than a total theft, to that auto; and

   b. The **loss** is covered under Comprehensive Coverage or caused by **collision**, and the cause of **loss** is not otherwise excluded under Part D of this policy

2. **We** will reimburse **you** only for that period of time reasonably required to **repair** or replace **your covered auto**. If **we** determine **your covered auto** is a total loss, the rental period will end no later than seven days after **we** have made a settlement offer.

**LIMIT OF LIABILITY**

Paragraph A. of the Limit of Liability section is replaced in its entirety by the following:

A. Total loss to **your covered auto**. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**, and the cost to transfer or replace any equipment, furnishings or parts designed to assist disabled persons.

   1. The maximum amount **we** will include for loss to custom equipment in or on **your covered auto** is $5,000.

   2. **We** will declare **your covered auto** to be a total loss if, in our judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

   3. If Car Replacement Assistance is shown on the Features Declarations for this **your covered auto**, **we** will pay an additional 20% of the **actual cash value** of the vehicle at the time of a total loss. This additional amount:

      a. Is separate from the limit available for loss to your covered auto under Comprehensive Coverage or Collision Coverage; and

Garrison P&C 00000009

0901119cab00c687

USAA Confidential

b. Is available if the total loss is paid:

    (1) Under this policy's Comprehensive Coverage or Collision Coverage; or

    (2) Because of the **PD** by or on behalf of persons or organizations who may be legally responsible.

However, Car Replacement Assistance does not apply to total loss to any **nonowned vehicle**.

Paragraph B. of the Limit of Liability section is replaced in its entirety by the following:

B. Other than a total loss to **your covered auto**:

    1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is:

        a. For damage to **your covered auto's** windshield, the amount of the **windshield estimate**. The amount of the **windshield estimate** will be calculated by **us** or someone on **our** behalf after **you** notify us of the **loss**. Upon request, **we** will identify at least one **windshield network provider** who is willing to complete the **repair** for the amount of the **windshield estimate**.

        b. For damage other than to **your covered auto's** windshield, the amount necessary to **repair** the **loss** based **our** estimate that **we** approve, if submitted by **you** or a third party. Upon request, **we** will identify at least one facility who is willing and able to complete the **repair** for the amount of the estimate.

    2. **Our** estimate or **our windshield estimate** may be based upon:

        a. Non-Original Equipment Manufacturer (non-OEM) parts for **repair** of **your covered auto's** windshield.

        b. Used, rebuilt, remanufactured or non-OEM parts for **loss** other than to **your covered auto's** windshield.

    3. **You** may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. However, **you** will be responsible for any cost difference between the parts included in **our** estimate or in **our windshield estimate** and the new OEM parts used in the **repair**.

    4. **You** may have your windshield **repair** performed by **your** provider of choice, however **we** will not be responsible for any amount charged that exceeds **our windshield estimate**. Any amount charged in excess of **our windshield estimate** shall not be considered a deductible.

    5. **We** will not take a deduction for depreciation. **We** will take a deduction if **you** fail to **repair** prior damage. Prior damage does not include wear and tear.

Paragraph D. of the limit of Liability section is replaced in its entirety by the following:

D. Under Rental Reimbursement Coverage, **our** maximum limit of liability is the reasonable amount necessary to reimburse **you** for expenses incurred to rent a vehicle in the applicable class shown on the Declarations:

    1. Economy Class. For purposes of this endorsement, Economy Class means "mini," small or compact 2- and 4-door cars that are not considered sports or luxury vehicles and are not the station wagon type.

    2. Standard Class. For purposes of this endorsement, standard class means standard and full size 2- and 4-door cars that are not considered sports or luxury vehicles and are not the station wagon type.

Garrison P&C 00000010

0901119cab00c687

USAA Confidential

3.  Multipassenger/Truck Class. For purposes of this endorsement, Multipassenger/Truck class means:

    a.  Sports, convertible and luxury cars of any size;

    b.  Station wagons;

    c.  Minivans;

    d.  Mid−size cargo and passenger vans

e.  Pickup trucks; and

f.  "Mini," small and midsize sport utility vehicles (SUVs) that are not considered luxury SUV's.

4.  Large SUV Class. For purposes of this endorsement, Large SUV Class means luxury SUVs of any size, large SUVs, any private passenger vehicle equipped to assist the disabled (when available) and large cargo or passenger vans.

## PART E − GENERAL PROVISIONS

### DUTIES AFTER AN ACCIDENT OR LOSS

Paragraph E. is deleted in its entirety and replaced with the following:

E.  A person seeking coverage under Part D − Physical Damage Coverage for **loss** must also:

    1.  Take reasonable steps after **loss** to protect **your covered auto** and its equipment from further **loss**. **We** will pay reasonable expenses incurred to do this.

    2.  Promptly notify the police if **your covered auto** is stolen.

    3.  Permit **us** to inspect and appraise the damaged property, before **you** agree to **repair** or disposal.

        a.  If **we** elect to inspect, inspection may be completed by physical inspection, review of a visual image, or a verbal description provided to **us**, at **our** option.

        b.  As it relates to windshield **repair**, permit **us** the opportunity to provide **you** with **our windshield estimate**, either verbally or in writing.

### MISREPRESENTATION

The Misrepresentation section is deleted in its entirety and replaced with the following:

**We** do not provide any coverage under this policy for any person who has concealed or misrepresented any material fact or circumstance relating to this insurance:

1.  At the time application was made; or

2.  At any time during the policy period; or

3.  In connection with the presentation or settlement of a claim.

### OUR RIGHT TO RECOVER PAYMENT

The Our Right to Recover Payment section is amended to add the following:

Our rights in this section do not apply with respect to amounts paid in excess of the actual cash value of your covered auto because of Car Replacement Assistance.

Copyright, USAA, 2019. All rights reserved

Garrison P&C 00000011

0901119cab00c687

USAA Confidential



# AMENDMENT OF POLICY PROVISIONS – RIDE SHARING ACTIVITY

This Amendment forms a part of the auto policy to which it is attached, and it modifies that policy as follows:

---

Notwithstanding Paragraph 3. of the definition of **covered person** in Part A – Liability, **covered person** does not include any **Transportation Network Company.**

## EXCLUSION

**We** do not provide any coverage under this policy for accident or loss that occurs while any **covered person** is operating a vehicle engaged in **ride sharing activity** in conjunction with a **Transportation Network Company.** This exclusion does not apply to a share-the-expense car pool.

This exclusion applies during the time the **covered person** is logged on to the **Transportation Network Company's** online-enabled application or platform and available to accept a passenger assignment, whether or not a passenger assignment has been accepted. When a passenger assignment has been accepted, coverage is excluded while the passenger is **occupying your covered auto.**

However, if a premium for Ride Share Gap Protection is shown on the Declarations for **your covered auto:**

1. This exclusion does not apply with respect to that vehicle during the time when the **covered person** is logged on to the **Transportation Network Company's** online-enabled application or platform and available to accept a passenger assignment, but has not yet accepted a passenger assignment; and

2. Any and all coverage under this policy will extend with respect to that vehicle during the time when the **covered person** is logged on to the **Transportation Network**

**Company's** online-enabled application or platform and available to accept a passenger assignment, but has not yet accepted a passenger assignment.

3. When a passenger assignment has been accepted, coverage will not extend while the passenger is **occupying your covered auto.**

## DEFINITIONS

The following definitions apply:

1. **"Ride sharing activity"** means use of **your covered auto** to provide prearranged transportation of persons in conjunction with a **Transportation Network Company.**

2. **"Transportation Network Company"** means an entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect clients with drivers who use their personal vehicles to provide the requested transportation. Examples of a **Transportation Network Company** include, but are not limited to Uber, SideCar and Lyft.

## DUTIES

The following duties apply:

1. **You** must notify **us** if any **covered person** is participating in **ride sharing activity.**

2. For accident or loss that occurs while any **covered person** is operating a vehicle engaged in **ride sharing activity**, any person or entity seeking any coverage

Garrison P&C 00000012

0901119cab00c687

USAA Confidential

must cooperate with **us** to ensure **we** are provided with pertinent data regarding the loss, including the precise dates and times:

a.   The **covered person** logged on and off the **Transportation Network Company's** online-enabled application or platform; and

b.   When a passenger assignment was accepted through such application or platform.

**You** must cooperate with **us** by executing an authorization to obtain the pertinent data and records regarding the loss, if such authorization is necessary for release of the data or records.

Copyright, USAA 2017. All rights reserved.

**RSGPFL(01)** 03-18

Garrison P&C 00000013

0901119cab00c687

USAA Confidential



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

# FLORIDA AUTO POLICY

## READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the company's board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

| | DECLARATIONS PAGE |
|---|---|
| | Named Insured and Address<br>Policy Period<br>Operators<br>Description of Vehicle(s)<br>Coverages, Amounts of<br>   Insurance and Premiums<br>Endorsements |
| Beginning on Page  **3** | **Agreement and Definitions** |
| **Part A   4** | **Liability Coverage** |
| | Definitions<br>Insuring Agreement<br>   Bodily Injury Liability Coverage and<br>   Property Damage Liability Coverage<br>Limit of Liability<br>Supplementary Payments<br>Exclusions<br>Out of State Coverage<br>Financial Responsibility Required<br>Other Insurance |
| **Part B-1 8** | **Personal Injury Protection Coverage** |
| | Definitions<br>Insuring Agreement<br>Limit of Liability<br>Application of Deductible<br>Exclusions<br>Other Insurance |
| **Part B-2 14** | **Medical Payments Coverage** |
| | Definitions<br>Insuring Agreement<br>Limit of Liability<br>Exclusions<br>Other Insurance<br>Special Provisions |

(Quick Reference continued on Page 2)

0901119cab00c687

**USAA Confidential**

| Part C | 17 | Uninsured Motorists Coverage |
|---|---|---|
| | | Definitions |
| | | Insuring Agreement |
| | | Limit of Liability (Stacked) |
| | | Exclusions |
| | | Other Insurance |
| | | Non-Duplication |
| **Part D** | **21** | **Physical Damage Coverage** |
| | | Definitions |
| | | Insuring Agreement |
| | | Comprehensive Coverage |
| | | Collision Coverage |
| | | Rental Reimbursement Coverage |
| | | USAA Roadside Assistance |
| | | Limit of Liability |
| | | Payment of Loss |
| | | Loss Payable Clause |
| | | Waiver of Collision Deductible |
| | | Exclusions |
| | | Mandatory Pre-Insurance Inspection |
| | | No Benefit to Bailee |
| | | Other Sources of Recovery |
| | | Appraisal |

| Part E | 26 | General Provisions |
|---|---|---|
| | | Bankruptcy |
| | | Changes |
| | | Conformity to Law |
| | | Duties After an Accident or Loss |
| | | Legal Action Against Us |
| | | Mediation |
| | | Misrepresentation |
| | | Non-Duplication of Payment |
| | | Our Right to Recover Payment |
| | | Ownership |
| | | Policy Period and Territory |
| | | Reducing the Risk of Loss and Other Benefits |
| | | Spouse Access |
| | | Termination |
| | | Transfer of Your Interest in this Policy |
| | | Two or More Auto Policies |

Garrison P&C 00000015

0901119cab00c687

USAA Confidential

# FLORIDA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in **boldface** when used.

A. **"You"** and **"your"** refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. **"We**," **"us**," and **"our"** refer to the Company providing this insurance.

C. **"Auto business"** means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing, or storing vehicles.

D. **"Bodily injury"** (referred to as **BI**).

   1. **"Bodily injury"** means bodily harm, sickness, disease, or death.

   2. **"Bodily injury"** does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. **"Driving contest or challenge"** includes, but is not limited to:

   1. A competition against other people, vehicles, or time; or

   2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

F. **"Family member"** means a person related to **you** by blood, marriage, or adoption who resides primarily in **your** household. This includes a ward or foster child.

G. **"Fungi"** means any type or form of **fungi**, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by **fungi**.

H. **"Miscellaneous vehicle"** means the following motorized vehicles: motor home; golf cart; snowmobile; all-terrain vehicle; or dune buggy.

I. **"Motorcycle"** means a two- or three-wheeled motor vehicle that is subject to motor vehicle licensing in the location where the **motorcycle** is principally garaged.

J. **"Newly acquired vehicle."**

   1. **"Newly acquired vehicle"** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:

     a. A private passenger auto, pickup, **trailer**, or **van**;

     b. A **miscellaneous vehicle** that is not used in any business or occupation; or

     c. A **motorcycle**, but only if a **motorcycle** is shown on the current Declarations.

Garrison P&C 00000016

0901119cab00c687

USAA Confidential

2. **We** will automatically provide for the **newly acquired vehicle** the broadest coverages as are provided for any vehicle shown on the Declarations. If **your** policy does not provide Comprehensive Coverage or Collision Coverage, **we** will automatically provide these coverages for the **newly acquired vehicle** subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under J.2. will apply for up to 30 days after the date **you** or any **family member** becomes the owner of the **newly acquired vehicle**. If **you** wish to continue coverage for the **newly acquired vehicle** beyond this 30-day period, **you** must request it during this 30-day period, and **we** must agree to provide the coverage **you** request for this vehicle. If **you** request coverage after this 30-day period, any coverage that **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

K. **"Occupying"** means in, on, getting into or out of.

L. **"Property damage"** (referred to as **PD**).

  1. **"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

  a. Stored as or on;

  b. Created or used on; or

  c. Transmitted to or from;

  computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

M. **"Trailer"** means a vehicle designed to be pulled by a private passenger auto, pickup, **van** or **miscellaneous vehicle**. It also means a farm wagon or implement while towed by such vehicles.

N. **"Van"** means a four-wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

O. **"Your covered auto"** means:

  1. Any vehicle shown on the Declarations.

  2. Any **newly acquired vehicle**.

  3. Any **trailer you** own.

# PART A - LIABILITY COVERAGE

## DEFINITIONS

**"Covered person"** as used in this Part means:

  1. **You** or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

  2. Any person using **your covered auto**.

  3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom

coverage is afforded in 1. or 2. above. With respect to an auto or **trailer** other than **your covered auto**, this provision only applies if the other person or organization does not own or hire the auto or **trailer**.

The following are not **covered persons** under Part A:

  1. The United States of America or any of its agencies.

Garrison P&C 00000017

0901119cab00c687

USAA Confidential

## (PART A Cont'd.)

2. Any person with respect to **BI** or **PD** resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the **BI** or **PD**.

## INSURING AGREEMENT

**We** will pay compensatory damages for **BI** or **PD** for which any **covered person** becomes legally liable because of an auto accident. **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for these damages. **Our** duty to settle or defend ends when **our** limit of liability for these coverages has been paid or tendered. **We** have no duty to defend any suit or settle any claim for **BI** or **PD** not covered under this policy.

## LIMIT OF LIABILITY

For **BI** sustained by any one person in any one auto accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for **BI** Liability.

Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for **BI** Liability is **our** maximum limit of liability for all damages for **BI** resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for **PD** Liability is **our** maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most **we** will pay regardless of the number of:

1. **Covered persons**;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, **our** limit of liability will be the minimum required by the state's financial responsibility law.

## SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of a **covered person**:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over **our** limit of liability shown on the Declarations.

2. Prejudgment interest awarded against the **covered person** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit **we** defend, on that part of a judgment that does not exceed **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment that does not exceed **our** limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

5. The amount a **covered person** must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or **van** which occurs while the vehicle is in the care, custody, or control of a **covered person**. The most **we** will pay is an amount equal to one month of the basic salary of the **covered person** at the time of a loss. Only Exclusions A.1. and A.8. apply.

6. Other reasonable expenses incurred at **our** request.

0901119cab00c687

USAA Confidential

7. All defense costs **we** incur.

## EXCLUSIONS

A. **We** do not provide Liability Coverage for any **covered person**:

1. Who intentionally acts or directs to cause **BI** or **PD**, or who acts or directs to cause with reasonable expectation of causing **BI** or **PD**.

2. For **PD** to property owned or being transported by a **covered person**.

3. For **PD** to property rented to, used by, or in the care of any **covered person**. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For **BI** to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

a. A share-the-expense car pool; or

b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the **auto business**. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of **your covered auto** by **you**, any **family member**, or any partner, agent, or employee of **you** or any **family member**.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the **auto business**, farming, or ranching. This exclusion (A.7.) does not apply:

a. To the maintenance or use of a private passenger auto; a pickup or **van** owned by **you** or any **family member**; or a **trailer** used with these vehicles; or

b. To the maintenance or use of a pickup or **van** not owned by **you** or any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

9. For **BI** or **PD** for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For **BI** or **PD** occurring while **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages.

12. For **BI** sustained as a result of exposure to **fungi**, wet or dry rot, or bacteria.

13. For **BI** to a relative who resides primarily in that **covered person's** household.

B. **We** do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not **your covered auto** unless that vehicle is:

a. A four- or six-wheel land motor vehicle designed for use on public roads;

b. A moving van for personal use;

c. A **miscellaneous vehicle**; or

d. A vehicle used in the business of farming or ranching.

0901119cab00c687

**USAA Confidential**

**(PART A Cont'd.)**

2. Any vehicle, other than **your covered auto**:

   a. That has fewer than four wheels; or

   b. That is designed mainly for use off public roads.

   This exclusion (B.2.) does not apply while the vehicle is being used in a medical emergency.

3. Any vehicle, other than **your covered auto**, that is owned by **you**, or furnished or available for **your** regular use. This exclusion (B.3.) does not apply to a vehicle not owned by **you** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (B.4.) does not apply:

   a. To **your** maintenance or use of such vehicle; or

   b. To a vehicle not owned by any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

5. Any vehicle while being operated in, or in practice for, any **driving contest or challenge**.

C. There is no coverage for liability assumed by any **covered person** under any contract or agreement.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **your** policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY REQUIRED**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

A. If there is other applicable liability insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. With respect to a vehicle **you** or a **family member** does not own, any insurance **we** provide to a **covered person** shall be excess over:

   1. Any other applicable liability insurance; or

   2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

   However, with respect to a vehicle leased or rented by **you**, if **you** have agreed to provide primary coverage in a written lease or rental agreement, the coverage provided by this policy is primary, but only for the minimum limits required by the Florida Financial Responsibility law and the Florida Motor Vehicle No-Fault Law.

Garrison P&C 00000020

0901119cab00c687

USAA Confidential

# PART B-1 - PERSONAL INJURY PROTECTION COVERAGE
(Referred to as PIP Coverage)

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member**:

   a. While **occupying your covered auto** within the United States or Canada;

   b. While **occupying** any **motor vehicle** within the State of Florida; or

   c. As a **pedestrian**, for BI caused by physical contact with a **motor vehicle** and resulting from an accident occurring within the State of Florida.

2. Any other person while **occupying** or when struck by **your covered auto** within the State of Florida. However, this (A.2.) does not apply if the person is:

   a. An **owner** of a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law; or

   b. An insured entitled to receive PIP benefits from the **motor vehicle owner's** insurer.

B. **"Emergency medical condition"** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

C. **"Entity wholly owned"** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed care practioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395.

D. **"Family member"** as used in this Part means a relative of any degree by blood, marriage, or by adoption, who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

E. **"Medically necessary."**

1. **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and

   c. Not primarily for the convenience of the patient, physician, or other health care provider.

Garrison P&C 00000021

0901119cab00c687

USAA Confidential

2. **"Medically necessary"** does not include the following:

   a. Spinal ultrasound, also known as sonography, ultrasonography, and echography;

   b. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining bodily injury covered by personal injury protection benefits; and

   c. Dermatomal Evoked Potential.

F. **"Medical benefits"** means **reasonable fees** for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and **medically necessary** ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to F.1. below within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

   1. Initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III or chapter 401 which provides emergency transportation and treatment.

   2. Upon referral by a provided described in F.1., follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to F.1. which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by any of the following persons or entities:

   a. A hospital or ambulatory surgical center licensed under chapter 395.

   b. An **entity wholly owned** by one or more physicians licensed under chapter 458 or 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

   c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

   d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in F.2.

   e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

      (1) Has a medical director licensed under chapter 485, chapter 459, or chapter 460;

      (2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

0901119cab00c687

**USAA Confidential**

(3) Provides at least four of the following medical specialties:

(a) General medicine;

(b) Radiography;

(c) Orthopedic medicine;

(d) Physical medicine;

(e) Physical therapy;

(f) Physical rehabilitation;

(g) Prescribing or dispensing outpatient prescription medication;

(h) Laboratory services.

3. Reimbursement for services and care provided in F.1. or F.2. up to $10,000 if a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, a physician assistant licensed under chapter 458 or 459, or an advanced registered nurse practitioner licensed under chapter 464 has determined that the injured person had an **emergency medical condition**.

4. Reimbursement for services and care provided in F.1. or F.2. is limited to $2,500 if any provider listed in F.1. or F.2. determines that the injured person did not have an **emergency medical condition**.

5. **Medical benefits** do not include massage as defined in s. 480.033 or acupuncture as defined in s. 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

G. **"Motor vehicle."**

1. **"Motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any **trailer** or semi-trailer designed for use with such vehicle.

2. **"Motor vehicle"** does not include a mobile home or any vehicle, other than a **motor vehicle** used in public school transportation:

a. Which is used as mass transit and designed to transport more than five passengers exclusive of the operator of the vehicle; and

b. Owned by a municipality, a transit authority, or a political subdivision of the state.

H. **"Owner"** means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

1. A debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement; and

2. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

3. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

I. **"Pedestrian"** means a person while not **occupying** any self-propelled vehicle.

J. **"Reasonable accessible"** means any location within the municipality where the **covered person** is receiving treatment, or in which the **covered person** resides, or within 10 miles by road of a **covered person's** residence, provided such location is within the county in which the **covered person** resides.

If there is no qualified physician to conduct the examination in a location **reasonably accessible** to the **covered person**, then such examination shall be conducted in an area of the closest proximity to the insured's residence.

Garrison P&C 00000023

0901119cab00c687

USAA Confidential

K.  **"Reasonable fee"** is no more than 80 percent of the following schedule of maximum charges:

1.  Two hundred (200) percent of Medicare for emergency transport and treatment by providers licensed under chapter 401.

2.  Seventy-five (75) percent of the hospital's usual and customary charges for emergency services and care provided by a hospital licensed under chapter 395.

3.  The usual and customary charges in the community for emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist.

4.  Two hundred (200) percent of Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services for hospital inpatient services, other than emergency services and care.

5.  Two hundred (200) percent of Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services for hospital outpatient services, other than emergency services and care.

6.  For all other medical services, supplies and care, two hundred (200) percent of the allowable amount under:

    a.  Medicare Part B, except as provided in 6.b and 6.c. below;

    b.  Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories;

    c.  The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment; or

    d.  If such services, supplies or care are not reimbursable under Medicare Part B, **we** may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided.

    For purposes of this definition (K.), the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services are rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the applicable schedule of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

L.  **"Replacement services expenses"** means, with respect to the period of disability of the **covered person**, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the **covered person** would have performed without income for the benefit of the **covered person's** household.

M.  **"Work loss"** means, with respect to the period of disability of the **covered person**, 60 percent of gross income and earning capacity from inability to work proximately caused by the **BI** sustained by the **covered person**. However, **"work loss"** does not include any loss after death of a **covered person**.

N.  **"Your covered auto"** as used in this Part does not include any **miscellaneous vehicle** or **motorcycle** for which security is not required under the Florida Motor Vehicle No-Fault Law.

Garrison P&C 00000024

0901119cab00c687                    **USAA Confidential**

**(PART B-1 Cont'd.)**

## INSURING AGREEMENT

A. **We** will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the **covered person**:

1. **Medical benefits**; and

2. **Work loss**; and

3. **Replacement services expenses**; and

4. Death benefits of $5,000. Death benefits are in addition to the **medical benefits**, **work loss** and **replacement services expenses** provided under the insurance policy.

These must be incurred as a result of **BI** (1) caused by an accident arising out of the ownership, maintenance, or use of a **motor vehicle** and (2) sustained by a **covered person**.

B. **We** will not be liable for subsequent PIP benefits if a **covered person** unreasonably refuses to submit to an examination as required in Part E - General Provisions, Duties After an Accident or Loss.

C. Whenever a person making a claim is charged with committing a felony, **we** shall withhold PIP benefits until 30 days after **we** receive notice that the prosecution, at the trial level, makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed, or the person is acquitted.

D. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **reasonable fees** for **medically necessary** and appropriate services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount **we** determine to be **reasonable fees** and reasonable expenses, but such additional charges are not covered.

E. If the service provider sues the **covered person** because **we** refuse to pay expenses that **we** determine are unreasonable or unnecessary, **we** will settle or defend the suit, as **we** consider appropriate. **We** will pay defense costs and any resulting settlement or judgment against the **covered person** for reasonable and necessary expenses, subject to the limit of liability for this coverage. The **covered person** must cooperate with **us** in the defense of any claim or lawsuit. **We** will also pay a **covered person** up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

F. **We** may utilize Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies or care if the coding policy or payment methodology does not constitute a utilization limit.

## LIMIT OF LIABILITY

A. Regardless of the number of **covered persons**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident, the total aggregate limit of PIP benefits available under Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **BI** as the result of one accident shall not exceed the amount indicated on the Declarations.

B. Any amount payable under PIP Coverage shall be reduced by the amount of benefits a **covered person** has recovered or is entitled to recover for the same elements of loss under the workers' compensation laws of any state or the Federal Government.

Garrison P&C 00000025

0901119cab00c687

**USAA Confidential**

**(PART B-1 Cont'd.)**

C. **We** will reserve $5,000 of PIP benefits for payment to physicians licensed under chapter 458 or chapter 459 or dentists licensed under chapter 466 who provide emergency services and care, as defined in s. 395.002, or who provide hospital inpatient care. The amount held in reserve will be used only to pay claims from such physicians or dentists until 30 days after the date **we** receive notice of the accident. After the 30-day period, any amount of the reserve for which we have not received notice of such claims may be used to pay other PIP benefits for loss or expense incurred because of the accident.

## APPLICATION OF DEDUCTIBLE

The amount of any deductible stated on the Declarations, incurred by or on behalf of each person to whom the deductible applies and who sustains **BI** as a result of any one accident, shall be deducted from 100% of the **medical benefits**, **work loss**, and **replacement services expenses** described in F.S. s. 627.736(1) before the application of any percentage limitation that may result because of the lack of Medical Payments benefits coverage. Such deductible shall not apply to:

1. The death benefit; or

2. Any person determined eligible pursuant to the Florida Crime Compensation Act, excluding s. 960.28 of the act.

## EXCLUSIONS

A. **We** do not provide PIP Coverage for **BI** sustained by any **covered person**:

1. While **occupying** a **motor vehicle** you own that is not **your covered auto** under this Part;

2. While **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (A.2.)

does not apply to **you**.

3. While operating **your covered auto** without expressed or implied consent;

4. If that **covered person** intentionally caused the **BI**;

5. While committing a felony;

6. For **work loss** if an entry on the Declarations indicates such coverage does not apply; or

7. While **occupying** a **motor vehicle** located for use as a residence or premises.

B. **We** will not pay benefits under PIP Coverage for services, supplies or care that is not reimbursable under Medicare or Florida workers' compensation law.

C. **We** will not pay benefits under PIP Coverage for any person:

1. Entitled to PIP benefits from:

   a. The owner of a **motor vehicle** other than **you**; or

   b. That owner's insurer.

2. Who owns an uninsured motor vehicle subject to the Florida Motor Vehicle No-Fault Law, as amended.

## OTHER INSURANCE

A. If there is other applicable PIP Coverage, **we** will pay only **our** share of the loss and of expenses incurred in processing the claim. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. If a **covered person** is injured while **occupying**, or when struck by, a **motor vehicle** rented or leased under a rental or lease agreement, PIP Coverage under the lessor's policy will be primary unless a statement in bold type on the face of the rental or lease agreement, specifies that PIP Coverage afforded under the lessor's policy shall be excess.

0901119cab00c687

**USAA Confidential**

# PART B-2 - MEDICAL PAYMENTS COVERAGE

**DEFINITIONS**

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member** while **occupying** any auto.

2. Any other person while **occupying your covered auto**.

3. **You** or any **family member** while not **occupying** a motor vehicle if injured by:

   a. A motor vehicle designed for use mainly on public roads;

   b. A **miscellaneous vehicle**; or

   c. A **trailer**.

B. **"Medical payment fee"** is an amount, as determined by **us** or someone on **our** behalf, that **we** will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for **medically necessary and appropriate medical services**. The amount that **we** will pay will be one of the following:

1. The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2. The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3. The amount negotiated with the provider; or

4. The lesser of the following:

   a. The actual amount billed; or

   b. A reasonable fee for the service provided.

C. **"Medically necessary and appropriate medical services"** are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by **us** or someone on **our** behalf, are required to identify or treat **BI** caused by an auto accident and sustained by a **covered person** and that are:

1. Consistent with the symptoms, diagnosis, and treatment of the **covered person's** injury and appropriately documented in the **covered person's** medical records;

2. Provided in accordance with recognized standards of care for the **covered person's** injury at the time the charge is incurred;

3. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4. Not primarily for the convenience of the **covered person**, his or her physician, hospital, or other health care provider;

5. The most appropriate supply or level of service that can be safely provided to the **covered person**; and

6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, **"medically necessary and appropriate medical services"** do not include the following:

1. Nutritional supplements or over-the-counter drugs;

Garrison P&C 00000027

0901119cab00c687

USAA Confidential

2. Experimental services or supplies, which means services or supplies that **we** determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed;

3. Inpatient services or supplies provided to the **covered person** when these could safely have been provided to the **covered person** as an outpatient;

4. Spinal ultrasound, also known as sonography, ultrasonography and echography;

5. Surface EMG;

6. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining **BI** covered by Medical Payments Coverage; and

7. Dermatomal Evoked Potential.

## INSURING AGREEMENT

A. **We** will pay only the **medical payment fee** for **medically necessary and appropriate medical services** and the reasonable expense for funeral services. These fees and expenses must:

1. Result from **BI** sustained by a **covered person** in an auto accident; and

2. Be incurred for services rendered within three years from the date of the auto accident.

B. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **medical payment fees** for **medically necessary and appropriate medical services** or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount **we** determine to be **medical payment fees** and reasonable expenses, but such additional charges are not covered.

For purposes of this Part, **we** shall not be considered to have been furnished with notice of the amount of a covered loss or medical bills due unless the statements or bills are properly completed in their entirety, with all relevant information being provided.

1. All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to **us** on a properly completed:

   a. Centers for Medicare and Medicaid Services (CMS) 1500 form; or

   b. UB 92 form.

2. For purposes of this Part, "properly completed" means that the billing shall, to the extent applicable, use the following in effect for the year in which services are rendered:

   a. The Physicians' Current Procedural Terminology (CPT);

   b. Healthcare Correct Procedural Coding System (HCPCS); and

   c. ICD-9.

3. In addition to the references shown in B.2.a. through B.2.c. above, **we**, or someone on **our** behalf, may seek guidance from one or more of the following to determine whether a form is "properly completed":

   a. The Office of the Inspector General (OIG);

   b. Physicians Compliance Guidelines; and

   c. Other authoritative treatises designated by rule by the Agency for Health Care Administration.

Garrison P&C 00000028

0901119cab00c687　　　　**USAA Confidential**

4. All providers, other than hospitals, shall include on the applicable claim form the professional license number of the provider in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

5. No statement of medical services may include charges for medical services performed by a person or entity unless that person or entity possesses the valid licenses required to perform such services.

C. If the service provider sues the **covered person** because **we** refuse to pay expenses that **we** determine are unreasonable or unnecessary, **we** will settle or defend the suit, as **we** consider appropriate. **We** will pay defense costs and any resulting settlement or judgment against the **covered person** for reasonable and necessary expenses, subject to the limit of liability for this coverage. The **covered person** must cooperate with **us** in the defense of any claim or lawsuit. **We** will also pay a **covered person** up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

D. **We** will not be liable for pending or subsequent benefits if a **covered person** or assignee of benefits under Medical Payments Coverage refuses to submit to an examination as required in Part E - General Provisions, Duties After an Accident or Loss.

## LIMIT OF LIABILITY

A. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each **covered person** injured in any one accident. This is the most **we** will pay regardless of the number of **covered persons**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

## EXCLUSIONS

**We** do not provide benefits under this Part for any **covered person** for **BI**:

1. Sustained while **occupying** any vehicle that is not **your covered auto** unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A **miscellaneous vehicle**; or

   d. A vehicle used in the business of farming or ranching.

2. Sustained while **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while **occupying** any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available.

5. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by **you**.

6. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by any **family member**. This exclusion (6.) does not apply to **you**.

7. Sustained while **occupying** a vehicle without expressed or implied permission.

Garrison P&C 00000029

0901119cab00c687                    **USAA Confidential**

8. Sustained while **occupying** a vehicle when it is being used in the business or occupation of a **covered person**. This exclusion (8.) does not apply to BI sustained while **occupying** a private passenger auto, pickup or **van**, or a **trailer** used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while **occupying your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any **driving contest or challenge**.

12. Sustained as a result of a **covered person's** exposure to **fungi**, wet or dry rot, or bacteria.

### OTHER INSURANCE

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

### SPECIAL PROVISIONS

A. If **your covered auto** and every other motor vehicle **you** own are within the policy territory referred to in Part E - General Provisions, then coverage under Part B-2 - Medical Payments Coverage will apply to **you** and any **family member** anywhere in the world.

B. Payment under Part B-2 – Medical Payments Coverage shall be applied to that portion of any claim for PIP medical expenses that is otherwise covered but not payable under PIP Coverage due to the limitation of 80% of medical expenses, regardless of whether the full amount of PIP benefits have been exhausted. However, Medical Payments Coverage shall not be payable for the amount of any deductible which has been selected under PIP Coverage.

## PART C - UNINSURED MOTORISTS COVERAGE
(referred to as UM Coverage)

UM Coverage includes underinsured motorists coverage.

### DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member**.

2. Any other person **occupying your covered auto**.

3. Any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person described in 1. or 2. above.

However, **"covered person"** does not include the United States of America or any of its agencies.

B. **"Uninsured Motor Vehicle."**

1. **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

a. To which no liability bond or policy applies at the time of the accident.

b. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

0901119cab00c687

USAA Confidential

c. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in **BI** without hitting:

(1) **You** or any **family member**;

(2) A vehicle **you** or any **family member** is **occupying**; or

(3) **Your covered auto**.

d. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent within 4 years after the accident.

2. **"Uninsured motor vehicle"** does not include any vehicle or equipment:

a. Owned by or furnished or available for the regular use of **you** or any **family member**. This exclusion (2.a.) does not apply:

(1) If the vehicle or equipment is **your covered auto** to which Part A of this policy applies; and

(2) Liability coverage is excluded for any person other than **you** or any **family member** for damages sustained in the accident by **you** or any **family member**.

b. Operated on rails or crawler treads, except for a snowmobile.

c. Designed mainly for use off public roads while not on public roads.

d. While located for use as a residence or premises.

**INSURING AGREEMENT**

A. **We** will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **BI** sustained by a **covered person** and caused by an auto accident. However, **we** will not pay damages for pain, suffering, mental anguish, or inconvenience unless the **BI** consists in whole or in part of:

1. Significant and permanent loss of an important bodily function;

2. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

3. Significant and permanent scarring or disfigurement; or

4. Death.

B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**LIMIT OF LIABILITY (STACKED)**

A. Accidents involving **BI** to **you** or any f**amily member**.

1. For **BI** sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage, multiplied by the number of premiums shown in the Declarations for UM Coverage. Subject to this limit for "each person," **our** maximum limit of liability for all damages for **BI** resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

0901119cab00c687                          USAA Confidential

2. Notwithstanding the maximum limits of liability for "each person" and "each accident" set forth in A.1. above, for **BI** sustained in any one accident by a **covered person** other than **you** or any **family member**, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the lesser of:

   a. The "each person" limit of liability for UM Coverage shown on the Declarations applicable to the vehicle that person was **occupying** at the time of the accident; or

   b. That **covered person's** pro-rata share of the "each accident" limit of liability for UM Coverage shown on the Declarations applicable to that vehicle.

   **You** or any **family member** who sustains **BI** in the accident will also be entitled to a pro-rata share of the "each accident" limit of liability applicable to that vehicle. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all **covered persons**.

3. These limits are the most **we** will pay, regardless of the number of:

   a. **Covered persons**;

   b. Claims made; or

   c. Vehicles involved in the accident.

B. Accidents not involving **BI** to **you** or any **family member**.

   1. For **BI** sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage.

   Subject to this limit for "each person", **our** maximum limit for all damages for **BI** resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage.

   2. These limits are the most **we** will pay, regardless of the number of:

      a. **Covered persons**;

      b. Claims made;

      c. Vehicles or premiums shown on the Declarations;

      d. Premiums paid; or

      e. Vehicles involved in the accident.

C. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid or payable because of the **BI**:

   1. Under any workers' compensation law, disability benefits law, or similar law; or

   2. Under any PIP Coverage, automobile medical expense coverage, or motor vehicle liability insurance.

D. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

**EXCLUSIONS**

A. We do not provide UM Coverage for **BI** sustained by any **covered person**:

   1. If that person or legal representative settles the **BI** claim without **our** written consent. However, this exclusion (A.1.) does not apply:

      a. If such settlement does not prejudice **our** right to recover payment; or

**USAA Confidential**

b. If that person or legal representative provides **us** with advance notice of any proposed settlement as required by Part E - General Provisions, Duties After an Accident or Loss.

2. While **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (A.2.) does not apply to:

a. A share-the-expense car pool; or

b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3. Using a vehicle without expressed or implied permission.

4. While **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

5. While **occupying** any vehicle when it is being operated in, or in practice for, any **driving contest or challenge**.

B. UM Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' compensation law or similar disability benefits law.

C. **We** do not provide UM Coverage for punitive or exemplary damages.

**OTHER INSURANCE**

If there is other applicable UM Coverage available under one or more policies or provisions of coverage:

1. Any insurance **we** provide with respect to a vehicle **you** do not own or to a person other than **you** or any **family member** will be excess over any collectible insurance.

2. If the coverage under this policy is provided:

a. On a primary basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.

**NON-DUPLICATION**

No **covered person** will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

1. Paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible.

2. Paid or payable under any workers' compensation law or similar disability benefits law.

3. Paid under another provision or coverage in this policy.

4. Paid under any PIP Coverage or under any automobile medical expense coverage.

Garrison P&C 00000033

0901119cab00c687

**USAA Confidential**

# PART D - PHYSICAL DAMAGE COVERAGE

**DEFINITIONS**

A. **"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. **"Collision"** means the impact with an object and includes upset of a vehicle. **Loss** caused by the following is covered under Comprehensive Coverage and is not considered **collision**: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a **collision**, **you** may elect to have it considered a **loss** caused by **collision**.

C. **"Custom equipment"** means equipment, furnishings and parts permanently installed in or upon **your covered auto**, other than:

   1. Original manufacturer equipment, furnishings, or parts;

   2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality;

   3. Equipment, furnishings, or parts designed to assist disabled persons;

   4. Anti-theft devices and devices intended to monitor or record driving activity; and

   5. Tires of a substantially similar size as those installed by the manufacturer.

D. **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

E. **"Nonowned vehicle."**

   1. **"Nonowned vehicle"** means any private passenger auto, pickup, **van**, **miscellaneous vehicle**, or **trailer** not owned by, or furnished or available for the regular use of, **you** or any **family member**. This applies only when the vehicle is in the custody of or being operated by **you** or any **family member**.

   2. A **nonowned vehicle** does not include any of the following vehicles used in any business or occupation other than farming or ranching:

      a. A pickup;

      b. A **van**; or

      c. A **miscellaneous vehicle**.

F. **"Repair."**

   1. **"Repair"** means restoring the damaged property to its pre-**loss** operational safety, function, and appearance. This may include the replacement of component parts.

   2. **Repair** does not require:

      a. A return to the pre-**loss** market value of the property;

0901119cab00c687                    USAA Confidential

(PART D Cont'd.)

     b. Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

     c. Rekeying of locks following theft or misplacement of keys.

G. **"Your covered auto,"** as used in this Part, includes:

    1. **Custom equipment**, up to a maximum of $5,000, in or on **your covered auto**.

    2. A **nonowned vehicle**. If there is a **loss** to a **nonowned vehicle**, **we** will provide the broadest coverage shown on the Declarations.

**INSURING AGREEMENT**

A. Comprehensive Coverage (excluding **collision**).

    1. Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations. However, **we** will pay for the cost of repairing or replacing the damaged windshield on **your covered auto** without a deductible.

    2. Transportation expenses. **We** will also pay:

     a. Up to $30 a day, to a maximum of $900, for transportation expenses incurred by **you** or any **family member**. This applies only in the event of a total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not **repairable**, up to seven days after **we** have made a settlement offer.

     b. If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement for that vehicle.

B. Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

C. Rental Reimbursement Coverage (for **loss** other than total theft).

    1. **We** will reimburse **you** for expenses **you** or any **family member** incurs to rent a substitute for **your covered auto**. This coverage applies only if:

     a. **Your covered auto** is withdrawn from use for more than 24 hours due to a **loss**, other than a total theft, to that auto; and

     b. The **loss** is covered under Comprehensive Coverage or caused by **collision**, and the cause of **loss** is not otherwise excluded under Part D of this policy.

    2. **We** will reimburse **you** only for that period of time reasonably required to **repair** or replace **your covered auto**. If **we** determine **your covered auto** is a total loss, the rental period will end no later than seven days after **we** have made a settlement offer.

D. USAA Roadside Assistance. **We** will pay the reasonable costs **you** or any **family member** incurs for one of the following each time **your covered auto** is disabled:

    1. Mechanical labor up to one hour at the place of breakdown.

    2. Locksmith services to gain entry to **your covered auto**. This does not include the rekeying of locks following theft or misplacement of keys.

Garrison P&C 00000035

0901119cab00c687

USAA Confidential

3. Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4. Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, **we** do not pay for the cost of these items.

## LIMIT OF LIABILITY

A. Total loss to **your covered auto**. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.

1. The maximum amount **we** will include for **loss** to **custom equipment** in or on **your covered auto** is $5,000.

2. **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

B. Other than a total loss to **your covered auto**:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to **repair** the **loss** based on **our** estimate or an estimate that **we** approve, if submitted by **you** or a third party. Upon request, **we** will identify at least one facility that is willing and able to complete the **repair** for the amount of the estimate.

2. **Our** estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts which are at least equivalent in kind and quality to the damaged parts prior to the **loss** in terms of fit, appearance, and performance.

3. **You** may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. **You** will be responsible, however, for any cost

difference between the parts included in **our** estimate and the new OEM parts used in the **repair**.

4. **We** will not take a deduction for depreciation. **We** will take a deduction if prior damage has not been **repaired**. Prior damage does not include wear and tear.

C. Personal property contained in **your covered auto**. The limits of liability described below are separate from the limits available for a **loss** to **your covered auto**:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the lesser of:

a. The amount necessary to replace the damaged or stolen property; or

b. $250.

2. **We** will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, **our** maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, **our** limit of liability is the reasonable price for the covered service.

## PAYMENT OF LOSS

**We** may pay for **loss** in money, or **repair** or replace the damaged or stolen property. **We** may, at **our** expense, return any stolen property to **you** or to the address shown on the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft. **We** may keep all or part of the damaged or stolen property and pay **you** an agreed or appraised value for it. **We** cannot be required to assume the ownership of damaged property. **We** may settle a claim either with **you** or with the owner of the property.

0901119cab00c687

USAA Confidential

**(PART D Cont'd.)**

## LOSS PAYABLE CLAUSE

**Loss** or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the **loss** results from **your** conversion, secretion, or embezzlement of **your covered auto**. **We** may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the named insured shown on the Declarations. **We** may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that **we** not send notices, including a notice of cancellation, **we** will abide by that request. When **we** pay the loss payee **we** will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

**We** will not apply the deductible to **loss** caused by **collision** with another vehicle if all of these conditions are met:

1. The **loss** to **your covered auto** is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of **your covered auto** is not legally responsible, in any way, for causing or contributing to the **loss**.

## EXCLUSIONS

**We** will not pay for:

1. **Loss** to **your covered auto** which occurs while it is being used to carry persons for a fee. This exclusion (1.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Damage due and confined to:

   a. Road damage to tires;

   b. Wear and tear;

   c. Freezing; or

   d. Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of **your covered auto** or its equipment. **We** will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/ transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

   This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto**, and it does not apply to USAA Roadside Assistance.

3. **Loss** due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4. **Loss** to a camper body or **trailer** owned by **you** or any **family member** which is not shown on the Declarations. This exclusion (4.) does not apply to one **you** or any **family member** acquires during the policy period and asks us to insure within 30 days after **you** or any **family member** becomes the owner.

5. **Loss** to any **nonowned vehicle** when used by **you** or any **family member** without a reasonable belief that **you** or that **family member** is entitled to do so.

Garrison P&C 00000037

0901119cab00c687

USAA Confidential

6. **Loss** to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7. **Loss** to any **nonowned vehicle** arising out of its use by **you** or any **family member** while employed or otherwise engaged in **auto business** operations.

8. **Loss** to **your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9. **Loss** to any vehicle while it is being operated in, or in practice for, any **driving contest or challenge**.

10. **Loss** resulting from:

   a. The acquisition of a stolen vehicle;

   b. Any legal or governmental action to return a vehicle to its legal owner; or

   c. Any confiscation or seizure of a vehicle by governmental authorities.

   This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. **Loss** resulting from use in any illicit or prohibited trade or transportation.

12. Any **loss** arising out of any act committed:

   a. By or at the direction of **you** or any **family member**; and

   b. With the intent to cause a **loss**.

13. **Loss** caused by **fungi**, wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of **fungi**, wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a **loss** covered under Comprehensive Coverage or Collision Coverage.

## MANDATORY PRE-INSURANCE INSPECTION

A. **We** have the right to inspect any private passenger motor vehicle which **you** insure or intend to insure for Physical Damage Coverage under this policy. This right applies only in accordance with Florida Statute 627.744.

B. When **we** require an inspection, **you** must cooperate and make the vehicle available for the inspection.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **nonowned vehicle** will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **nonowned vehicle**.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the **loss**.

This provision does not apply to USAA Roadside Assistance.

## APPRAISAL

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

USAA Confidential

## BANKRUPTCY

Bankruptcy or insolvency of the **covered person**, as defined in this policy, shall not relieve **us** of any obligations under this policy.

## CHANGES

A. The premium is based on information **we** have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or is incorrect or incomplete, **we** may adjust **your** premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, **we** will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the policy premium. **You** agree to give **us** notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

   1. Change in location where any vehicle is garaged.

   2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

   3. Replacement or addition of any vehicle. A replacement or additional vehicle is a **newly acquired vehicle**.

   4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless **we** agree to an earlier date.

   5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

   6. Addition or deletion of an operator.

   7. Change, addition, or deletion of any coverage or limits.

C. **We** will make any calculations or adjustments of **your** premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If **we** make a change which broadens coverage under this edition of **our** policy without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement that change in **your** location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

E. Deployment.

   1. If, because of **your** active-duty deployment in one of the military services of the United States, **you** have reduced the coverage on **your covered auto** and placed the vehicle in storage, then, upon **your** return from the deployment, **we** will reinstate the coverage that was on the vehicle prior to the deployment-caused reduction beginning on the date the vehicle is removed from storage.

0901119 cab00c687

USAA Confidential

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date **you** returned from deployment. If **you** wish to continue the reinstated coverage beyond the 60-day period, **you** must request it during the 60-day period. If **you** request reinstated coverage after this 60-day period, any coverage **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

3. **You** must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if **you** return from deployment on furlough or emergency leave for a period of 30 days or less, **we** will waive any increase in the premium for the period of time **you** are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs **we** will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment-caused reduction, and **you** must pay an additional premium for that coverage.

## CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local law, state or local law will apply.

## DUTIES AFTER AN ACCIDENT OR LOSS

**We** will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. **We** must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A - Liability must:

1. Cooperate with **us** in the investigation, settlement, or defense of any claim or suit.

2. Promptly send **us** copies of any notices or legal papers received in connection with a suit, accident, or loss.

3. Submit, as often as **we** reasonably require:

   a. To physical exams by physicians **we** select. **We** will pay for these exams.

   b. To examination under oath. The examination must be signed.

4. Authorize **us** to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by **us**.

6. Promptly notify the police if a hit-and-run driver is involved.

C. A person or entity seeking coverage under Part B-1 - PIP Coverage or Part B-2 - Medical Payments Coverage.

1. As soon as practicable, give to **us** written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist **us** in determining the amount due and payable.

2. Submit as often as **we** reasonably require, to examination under oath. The examination must be signed.

3. Submit to mental examinations by physicians **we** select at **our** expense when and as often as **we** may reasonably require. Mental exams or physical exams as required by **us** in B.3.a. above will be scheduled in a location reasonably accessible to such person, and a copy of the medical report shall be forwarded to such person if requested. Reasonably accessible means any location:

   a. Within the municipality where such person is receiving treatment or in which that person resides; or

0901119cab00c687

**USAA Confidential**

b.  Within 10 miles by road of such person's residence, provided such location is within the county in which that person resides.

If there is no qualified physician to conduct the examination in a location reasonably accessible to such person, then the examination shall be conducted in an area of the closest proximity to that person's residence.

D.  A person seeking coverage under Part C - UM Coverage must also comply with the following:

1.  If the **covered person** and the owner or operator of the **uninsured motor vehicle** reach a settlement agreement that would exhaust the owner's or operator's limits of liability, the **covered person** must submit the agreement to **us** in writing for **our** approval prior to final execution of the settlement agreement. This applies only if:

    a.  The settlement would not fully satisfy the **covered person's** claim for **BI**; and

    b.  A claim for UM Coverage has been or will be made against **us**.

2.  The **covered person** may file suit against **us** and the owner or operator of the **uninsured motor vehicle** if, within 30 days after **our** receipt of the settlement agreement, **we** do not:

    a.  Approve the settlement;

    b.  Waive **our** rights of recovery against the owner or operator of the **uninsured motor vehicle**;

    c.  Authorize the signing of a full release; and

    d.  Agree to arbitrate the claim for UM Coverage.

The suit shall decide if the **covered person** is legally entitled to collect damages and, if so, the amount.

E.  A person seeking coverage under Part D - Physical Damage Coverage must also:

1.  Take reasonable steps after loss to protect **your covered auto** and its equipment from further loss. **We** will pay reasonable expenses incurred to do this.

2.  Promptly notify the police if **your covered auto** is stolen.

3.  Permit **us** to inspect and appraise the damaged property before its repair or disposal.

**LEGAL ACTION AGAINST US**

A.  No legal action may be brought against **us** until there has been full compliance with all the terms of this policy.

1.  In addition, under Part A, no legal action may be brought against **us** until **we** agree in writing that the **covered person**, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

2.  In addition, under Part B-1 - PIP Coverage and Part B-2 - Medical Payments Coverage, if **we** fail to deny or pay a claim within 30 days of receiving adequate proof of that claim, the **covered person** shall not file suit for those benefits until providing **us** with a written demand for payment and giving **us** 30 days in which to respond to that demand. Any written demand for payment must include an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefits claimed to be due.

B.  No person or organization has any right under this policy to bring **us** into any action to determine the liability of a **covered person**, as defined in this policy.

Garrison P&C 00000041

0901119cab00c687                    USAA Confidential

**(PART E Cont'd.)**

C. Unless **we** agree otherwise, any legal action against **us** must be brought in a court of competent jurisdiction in the county and state where the **covered person** lived at the time of the accident.

## MEDIATION

**We** or the **covered person** may request mediation of any claim for **BI** in an amount of $10,000 or less or a claim for **PD** in any amount arising out of the ownership, operation, use, or maintenance of a motor vehicle prior to the institution of litigation.

Such request shall be filed with the Florida Department of Financial Services on a form approved by the department. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosures provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation.

The filing of a request for mediation tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the mediation process or the time prescribed in the Limitation of Actions, whichever is later.

## MISREPRESENTATION

**We** do not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, **we** will pay for each element of loss only once under this policy.

## OUR RIGHT TO RECOVER PAYMENT

A. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, **we** will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable **us** to exercise **our** rights, and shall do nothing after loss to prejudice them. However, **our** rights in this paragraph do not apply:

1. Under Part C - UM Coverage, with respect to payments made because of the **BI** resulting from an accident with an **uninsured motor vehicle**, as defined in Definition 1.b. of that Part, if **we**:

a. Have been given prompt written notice of a tentative settlement between a **covered person**, as defined in Part C, and the insurer of an **uninsured motor vehicle**; and

b. Fail to advance payment to such person in an amount equal to the tentative settlement within 30 days after receipt of notification.

Garrison P&C 00000042

0901119cab00c687

**USAA Confidential**

If **we** advance payment to the **covered person** in an amount equal to the tentative settlement within 30 days after receipt of notification, that payment will be separate from any amount the **covered person** is entitled to recover under the provisions of Part C - UM Coverage. However, **we** shall have a right to recover such advance payment.

2. Under Part D, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B. If **we** make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for **us** the proceeds of the recovery and reimburse **us** to the extent of **our** payment.

C. If the **covered person**, as defined in this policy, recovers from the party at fault and **we** share in the recovery, **we** will pay **our** share of the legal expenses. **Our** share is that percent of the legal expenses that the amount **we** recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by **us** from any other insurer under any inter-insurer arbitration agreement.

D. If **we** make payment for a claim under Part A, and the **covered person**, as defined in Part A:

1. Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

2. Failed or refused to comply with the duties specified in this policy and prejudiced **our** defense of the liability claim by such failure or refusal;

then, the **covered person** shall reimburse **us** to the extent of **our** payment and cost of defense.

E. If **we** make payment for a claim under Part D and **you** or any **family member** has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, then **you** shall reimburse **us** to the extent of **our** payment.

## OWNERSHIP

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of **your covered auto** between any ports of these locations.

However, PIP benefits under Part B-1 - PIP Coverage apply only to accidents occurring within the State of Florida with respect to any **covered person**, as defined in Part B-1 - PIP Coverage, other than **you** or any **family member**.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy, except PIP Coverage, are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if **you** have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for **BI** or **PD** is brought in the USA.

Garrison P&C 00000043

0901119cab00c687

USAA Confidential

3. Coverage under this policy does not extend:

   a. To any **covered person**, as defined in this policy, who does not live in the USA.

   b. To any **covered person**, as defined in this policy, **occupying** a vehicle which is not principally garaged and used in the USA.

   c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, **our** limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance **we** provide will be excess over any other similar valid and collectible insurance.

## REDUCING THE RISK OF LOSS AND OTHER BENEFITS

**We** may occasionally provide **you** with products or services that assist **you** in preventing or reducing the risk of loss, and may provide an incentive for **your** use of these items. **We** may also occasionally provide **you** with items, offers or services **we** think may benefit **you** or **your family members**. Such items, offers and services may be provided in any form **we** choose.

## SPOUSE ACCESS

A. The named insured and we agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

B. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

## TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

   1. **You** may not cancel a new or renewal policy providing PIP Coverage or Property Damage Liability Coverage during the first 60 days this policy is in effect unless:

      a. **Your covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

      b. Ownership of **your covered auto** is transferred; or

      c. Another policy is purchased to replace the policy being cancelled; or

      d. **You** are a member of the United States Armed Forces and are called to or on active duty outside the United States in an emergency situation.

   2. **You** may cancel this policy for any reason after this policy is in effect for 60 days, but the effective date of cancellation cannot be earlier than the date of the request unless **we** agree to an earlier date.

   3. **We** may cancel this policy by mailing a notice to the named insured shown on the Declarations at the most recent address **you** provided to **us** by giving:

      a. At least ten days notice if cancellation is for nonpayment of premium; or

      b. At least 45 days notice in all other cases.

USAA Confidential

**(PART E Cont'd.)**

4. If this is a new policy providing PIP Coverage and Property Damage Liability Coverage, **we** will not cancel for nonpayment of premium during the first 60 days following the date of issuance. However, **we** may cancel if a check used to pay **us** is dishonored for any reason.

5. After this policy is in effect for 60 days, or if this is a renewal policy, **we** will cancel only:

   a. For nonpayment of premium; or

   b. For material misrepresentation or fraud; or

   c. If **your** driver's license, or that of any driver who lives with **you** or customarily uses **your covered auto**, has been suspended or revoked. This must have occurred:

      (1) During the policy period or during the 180 days immediately preceding its effective date; or

      (2) If the policy is a renewal, during its policy period.

6. If this policy is issued to meet the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security, the following special provisions apply and supersede any contrary provisions in the policy:

   a. **You** may not cancel this policy for any reason.

   b. Effective when **our** underwriting is completed or 30 days from the effective date of the policy, whichever comes first:

      (1) **We** may not cancel this policy for any reason.

      (2) No refund of premium will be allowed.

(3) This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk vehicle, adding vehicles, adding new drivers or moving to a different rating territory.

(4) If there is a material change in the policy, **you** must obtain a new six-month non-cancellable policy. If **you** obtain the policy from **us**, **we** will give **you** a credit on the new policy for any unearned premium paid on the previously issued policy.

7. **We** may cancel for any other reason not prohibited by law.

B. Nonrenewal. If **we** decide not to renew this policy, **we** will mail notice by registered or certified mail or United States Post Office certificate of mailing to the named insured shown on the Declarations at the most recent address **you** provided to **us**. Notice will be mailed at least 45 days before the end of the policy period.

C. Automatic Termination.

1. If **we** offer to renew and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that **you** have not accepted **our** offer.

2. If **you** obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

D. Other Termination Provisions.

1. Mailing of any notice by registered or certified mail or United States Post Office proof of mailing of any notice will be sufficient proof of notice.

Garrison P&C 00000045

0901119cab00c687

USAA Confidential

**(PART E Cont'd.)**

2. If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to **our** manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice will become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**Your** rights and duties under this policy may not be assigned without **our** written consent. However, if the named insured shown on the Declarations dies, **we** will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2. The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy **we** issued to **you** apply to the same accident, the maximum limit of **our** liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to UM Coverage.

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

Garrison P&C 00000046

0901119cab00c687

**USAA Confidential**

THIS PAGE INTENTIONALLY LEFT BLANK

Garrison P&C 00000047

0901119cab00c687

USAA Confidential