**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL NIEMIS,

Plaintiff,

v. No: 8:20-cv-2956-WFJ-JSS

CCC INTELLIGENT SOLUTIONS, INC.,

Defendant.

_________________________________/

# ORDER

Plaintiff Michael Niemis brings this putative class action alleging Defendant CCC Intelligent Solutions, Inc. ("CCC") systematically applied unexplained and unjustified condition adjustments when determining the value of wrecked cars deemed to be "total losses." This case is one of several pending in United States district courts challenging the valuation systems used by Defendant CCC.

Before the Court today is Defendant CCC's Motion for Judgment on the Pleadings. Dkt. 47. Plaintiff Michael Niemis filed a response, Dkt. 54, and Defendant CCC replied, Dkt. 61. The Court held a hearing on the matter on June 23, 2021. Dkt. 69. With the benefit of full briefing and oral arguments, the Court grants Defendant CCC's motion for all claims.

## BACKGROUND

Plaintiff Michael Niemis is a Florida resident who insured his automobile through Garrison Property and Casualty Insurance Company ("Garrison"), a subsidiary of USAA Casualty Insurance Company ("USAA"). Dkt. 1, Ex. 1 at 1, 3. In May 2020, Plaintiff's car—a 2016 Jaguar F-Type R Automatic AWD—became damaged in an accident. *Id.* at 1. Plaintiff submitted an insurance claim to Garrison, which deemed his vehicle a total loss. *Id.* Under the terms of the Insurance Policy (the "Policy"), Garrison agreed to pay Plaintiff the actual cash value of the insured vehicle upon the occurrence of a total loss. Dkt. 42, Ex. 2 at 37. The policy defined actual cash value as "the amount that it would cost, at the time of loss, to buy a comparable vehicle." *Id.* at 35.

Defendant CCC is an information technologies company that values total loss vehicles for insurance companies. Dkt. 1, Ex. 1 at 3. Defendant CCC signed a contract with USAA (the "Services Agreement") to provide valuation reports for total loss vehicles. Dkt. 46. Garrison would then use these reports to determine how much it would pay its insureds for their claims. Dkt. 1, Ex. 1 at 4. Defendant CCC provided Garrison a valuation report for Plaintiff Niemis's car, determining that the actual cash value was $46,213 before taxes and fees. *Id.* at 5; Dkt. 47 at 8–9. Garrison paid Plaintiff this amount in June 2020, and Plaintiff accepted. Dkt. 1, Ex. 1 at 5; Dkt. 47 at 9.

Plaintiff takes issue with the methodologies Defendant CCC used to value his car. When calculating actual cash value, CCC compiles a list of "Comparable Vehicles" to help determine the market value of the insured's loss vehicle. According to Plaintiff, CCC has a practice of illegitimately decreasing the value of the comparable vehicles, which, in turn, downgrades the value of the insured's loss vehicle. Dkt. 1, Ex. 1 at 7–8.  Plaintiff argues these unfounded condition adjustments caused his car to be valued at $2,585 less than it should have. *Id.*

In the event Garrison and Plaintiff Niemis could not agree on the amount of loss, the Policy contains an appraisal provision that either party can invoke. The provision states:

> If we and you **do not agree on the amount of loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. **A decision agreed to by any two will be binding.** Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

Dkt. 42, Ex. 2 at 39 (emphasis added). After learning that Plaintiff Niemis disputed the valuation of his car, Garrison invoked the appraisal provision in December 2020. Dkt. 30, Ex. 1. Plaintiff agreed to participate in the appraisal process. Dkt. 30. The appraisers selected by Garrison and Plaintiff agreed that the value of Plaintiff's loss vehicle was $48,796.24. Dkt. 40, Ex. 2. Garrison then paid Plaintiff

an additional $2,583.24, which was the difference between Garrison's original valuation and the appraisers' new valuation. Dkt. 42 at 17–18.

Plaintiff filed this action in Florida state court in October 2020. Dkt. 1. He brings the case on behalf of himself and a putative class of individuals in Florida who had car insurance through Garrison and whose vehicles suffered total losses. Defendant CCC removed the action to federal court pursuant to the Class Action Fairness Act of 2005. Neither Garrison nor USAA are parties in the case. Before the Court today is Defendant CCC's Motion for Judgment on the Pleadings. Dkt. 47.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Judgment on the pleadings is warranted when, even accepting all facts in the complaint as true and viewing them in the light most favorable to the plaintiff, the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (citation omitted).

## ANALYSIS

### I. Defendant CCC is Entitled to Judgment on the Pleadings for the Tortious Interference Claim.

Plaintiff Niemis first alleges that Defendant CCC tortiously interfered with the Insurance Policy between him and Garrison. Plaintiff alleges a breach occurred when Garrison offered him $46,213 for his vehicle—an amount $2,585 less than what Plaintiff claims is the actual cash value of the car. Plaintiff argues Defendant CCC intentionally procured this breach by using unfounded negative condition adjustments to calculate an inaccurately low valuation of Plaintiff's car, which, in turn, enabled Garrison to offer less than the actual cash value. Plaintiff argues this behavior interfered with Garrison's contractual duties under the insurance policy, as well as its statutory duties under Fla. Stat. § 625.9743.

In Florida, the elements of tortious inference with contractual relations are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) absence of any justification or privilege; and (5) damages resulting from the breach. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)). "Imbedded within these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's

damages." *Chi. Title Ins. v. Alday-Donalson Title Co. of Fla*., 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (citation omitted).

The Court holds that Plaintiff cannot establish that a breach of contract occurred. Plaintiff Niemis bases his claim on the argument that the value of his loss was greater than Defendant CCC's calculation and Garrison's loss determination. But the Insurance Policy provides an extra-judicial mechanism to resolve this exact type of issue. It states:

> If we and you **do not agree on the amount of loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. **A decision agreed to by any two will be binding.** Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

Dkt. 30, Ex. A at 1 (emphasis added). Thus, in the event Plaintiff Niemis disagreed about the loss amount, the Policy required him to submit to an appraisal process that would calculate a binding loss amount. This is exactly what Plaintiff Niemis did, *see* Dkt. 30, Ex. A at 1, and the appraisers agreed that the value of the loss vehicle was $48,796.24, *see* Dkt. 40, Ex. 2. Garrison paid Plaintiff this amount, and Plaintiff accepted. *See* Dkt. 71 at 21.

This binding appraisal process makes *J.P.F.D Inv. Corp. v. United Specialty Ins. Co.*, 769 F. App'x 698 (11th Cir. 2019) particularly instructive for the Court's analysis. There, an insurer demanded an appraisal pursuant to the parties'

insurance agreement to settle a dispute about the value of the insured's loss. *Id.* at 701. Importantly, the insurer never denied coverage under the policy outright; it only disputed the amount of the loss. *Id.* at 705. The appraisers agreed upon a loss amount, and the insurer paid the appraisal award in full. *Id.* at 701.

The Eleventh Circuit held that the insured could not sue the insurer for failure to pay the loss amount until after an unsuccessful completion of the appraisal process. According to the court, the binding appraisal process meant that such a claim would not accrue unless the insurer failed to pay the appraisal award. *Id.* at 706. The court stated:

> Construing the loss payment provision and the appraisal provision together, if the parties cannot agree on the covered loss amount, they must undergo the contractual appraisal process before [the insurer's] obligation to pay the covered loss amount ripens . . . Therefore, any claim for breach of contract for failure to pay would not accrue until after there was an appraisal award that [the insurer] refused to pay . . . Only after [the insurer] refused to pay the amount in the appraisal award would [the insured's] breach of contract claim accrue.

*Id.*

The Eleventh Circuit's reasoning applies to the instant case. To establish a claim for tortious interference, Plaintiff Niemis must show there was a breach of the insurance policy. But, pursuant to the analysis in *J.P.F.D.*, a breach would accrue only if Garrison refused to pay the appraisal award. That is not what happened here; Garrison timely and fully complied with the policy when it paid Plaintiff the loss amount agreed to by the appraisers. Defendant CCC is therefore

entitled to judgment on the pleadings for this claim. One cannot tortiously interfere with an unaccrued contract.

## II. Defendant CCC is Entitled to Judgment on the Pleadings for the Third-Party Beneficiary Claim.

Plaintiff bases his second claim on the Services Agreement between USAA and Defendant CCC. Dkt. 1-1 at 13. Although Plaintiff admits he is not a party to the Services Agreement,[1] he nevertheless argues he can enforce the agreement as an intended third-party beneficiary. *Id.* at 14. He claims Defendant CCC breached the Services Agreement by failing to provide accurate valuation reports for total loss claims made by Garrison's insureds. *Id.*

Under Florida law,[2] a non-party to a contract has a right to sue for enforcement of the contract only if he is an "intended beneficiary." *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (citing *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968)).[3] "Incidental" beneficiaries have no enforceable rights under a contract. *Id.* A third party is an intended beneficiary only if a direct and primary object of the

---

[1] *See* Dkt. 71 at 15 ("THE COURT: You're not contending you're a party [to the Services Agreement]. MR. LOWTHER: Your Honor, we are not contending that we are a party.").

[2] *See Bochese*, 405 F.3d at 981 (stating it is a question of state law whether a non-party to a contract has a legally enforceable right therein).

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business September 30, 1981.

contracting parties was to confer a benefit on the third party. *Id.* Essential to this is "the clear intent and purpose of the contract to directly and substantially benefit the third party." *Thompson v. Com. Union Ins. Co. of N.Y.*, 250 So. 2d 259, 262 (Fla. 1971). In the absence of a clear intent to benefit the third party, this party cannot sue on the contract, even if he might derive some incidental or consequential benefit from its enforcement. *Bochese*, 405 F.3d at 982.

The Services Agreement states:

> **No Third Party Beneficiaries**. Any warranty, obligation, remedy, indemnification, commitment or liability of a party under or by virtue of this Agreement is solely intended for the benefit of the other party and is enforceable or recoverable by the other party only, and no other Entity is an intended third party beneficiary under this Agreement.

Dkt. S-46 at § 18.18. The Court holds that this clause expressly disclaims Plaintiff's purported status as a third-party beneficiary. Several portions of the clause express a clear and manifest intent *not* to benefit Plaintiff. *See Reconco v. Integon Nat'l Ins. Co.*, 312 So. 3d 914, 918 (Fla. 4th DCA 2021) (holding that disclaimer expressed clear and manifest intent *not* to benefit appellant). For example, CCC and USAA expressly reserve to only themselves the right to enforce the agreement, as well as the right to recover under the agreement. And the clause states that the benefits of the Services Agreement are solely reserved for the contracting parties. This language is dispositive and expressly disclaims Plaintiff's purported status as a third-party beneficiary.

Despite the waiver's clear language, Plaintiff argues its effect is cabined by the last clause of the provision: "and no other Entity is an intended third party beneficiary under this Agreement." According to Plaintiff, the use of the phrase "no other Entity" means the entire waiver provision must also refer to "Entities." And because the Services Agreement's definition of "Entity" does not include individual insureds like himself, Plaintiff Niemis argues the entire waiver provision must not apply to him either. In essence, Plaintiff argues the waiver only disclaims an "Entity" from being a third-party beneficiary; it says nothing about whether he as an individual insured can be a third-party beneficiary.

This argument is unavailing. Plaintiff's interpretation ignores the clear language that any benefits under the Services Agreement are "solely intended for the benefit of" the contracting parties. The waiver provision explicitly disclaims *any* third-party beneficiary, regardless of whether that third party is an "Entity" or an individual like Plaintiff Niemis. It is clear Defendant CCC and USAA intended that all rights, obligations, and liabilities under the contract were intended solely for the contracting parties. Nothing in the last clause of the provision changes this.

And even without this waiver, Plaintiff Niemis's claim would still fail because the Services Agreement as a whole does not evince a specific and clear intent to benefit him. In his attempt to argue otherwise, Plaintiff relies on the following clause from Section 2.1 of the Services Agreement:

> **USAA shall use the Services and Software only** for the evaluation, processing and settling of claims and damage and repair estimates arising in connection with USAA's business, which, for purposes of this Agreement, shall mean providing vehicle damage repair estimates, adjusting motor vehicle insurance claims, and servicing and maintain motor vehicle insurance claim records **on behalf of their customers and clients** . . .

Dkt. S-46 at § 2.1 (emphasis added). According to Plaintiff Niemis, the phrase "on behalf of their customers and clients" shows that the primary purpose of the Services Agreement is to benefit insureds like himself. Dkt. 54 at 2. He says this clause is sufficiently clear to establish his status as a third-party beneficiary.

The Court disagrees. Section 2.1 does not specifically and clearly signal an intent to benefit insureds like Plaintiff Niemis. Although this clause recognizes that USAA is in the business of providing insurance services to customers, the purpose of the clause is to set out the services Defendant CCC agreed to provide USAA and how USAA can use those services. Any benefit Plaintiff receives from this arrangement is merely incidental. When considering the contract as a whole—especially in light of the express disclaimer in Section 18.18—it is evident Section 2.1 on its own is not sufficiently clear to establish that Plaintiff is an intended third-party beneficiary. *See Sanlu Zhang v. Royal Carribbean Cruises, Ltd.*, No. 19-20773-Civ-Scola, 2019 WL 8895223, at *6–7 (S.D. Fla. Nov. 15, 2019) (holding that contract setting out services one company agreed to provide another was not sufficient to support a third-party beneficiary claim, even when the

arrangement benefited plaintiff). The Court awards Defendant CCC judgment on the pleadings for this claim.

## III. The Class Claims Cannot Continue.

In the event his individual claims failed, Plaintiff Niemis argues the class claims should nevertheless survive under a line of cases dealing with Rule 68 offers of judgment. Dkt. 54 at 19. Rule 68 allows a defendant to make an "offer of judgment" at any point up to two weeks before trial. *See* Fed. R. Civ. P. 68. Under Eleventh Circuit precedent, class claims do not necessarily become moot when a named plaintiff accepts a Rule 68 offer of judgment. *See Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704–09 (11th Cir. 2014). The relation-back doctrine allows a named plaintiff whose individual claims are moot to represent class members if that plaintiff will adequately present the class claims. *Id.* at 707. Thus, even if the individual claims are deemed moot through a Rule 68 offer of judgment, the class claims may remain live and the named plaintiff may retain the ability to pursue them. *Id.* at 704. Plaintiff Niemis argues his class claims should similarly remain live even though his individual claims do not.

The Court rejects Plaintiff Niemis's analogy. In cases involving Rule 68, the intervening settlement offer resolves the controversy at issue. But here, there was no controversy to begin with; there are no set of facts that would entitle Plaintiff to relief for the tortious interference claim or the third-party beneficiary claim. This is

not a situation where the defendant "picked off" the putative class members with settlement offers. This is a situation where the plaintiff did not have a claim to begin with. Therefore, the Court holds that the Rule 68 cases are inapposite to the present case, and Plaintiff Niemis's class claims are moot.

## IV. Plaintiff is Not Entitled to Attorney's Fees.

Finally, the Court holds that Plaintiff Niemis is not entitled to attorney's fees. Under Florida law, an insured is entitled to attorney's fees when: (1) the insurer denies benefits under the policy, and (2) this denial is ultimately shown to be incorrect. *See J.P.F.D.*, 769 F. App'x at 706 (citing *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1216 (Fla. 2016)). There is no incorrect denial of benefits—and the insured is therefore not entitled to fees—when the insured "races to the courthouse" without giving the insurer a chance to complete the claims adjusting process. *See J.P.F.D.*, 769 F. App'x at 706 ("[A]ttorney's fees . . . were not warranted where 'the insured never gave the insurer the opportunity to incorrectly deny the benefits before filing a lawsuit[.]'") (quoting *Goldman v. United Servs. Auto. Ass'n*, 244 So. 3d 310, 312 (Fla. 4th DCA 2018)). In the event the insurance policy provides for an appraisal process to settle disagreements about loss amounts, an insured is entitled to fees only if the insurer refused to pay the appraisal award. *See id.* (holding there would be a denial of benefits under the attorney's fees analysis only if the insurer refused to pay the appraisal award).

Here, there was never a denial of benefits under the Policy, much less an incorrect denial of benefits. *See id.* Garrison fully complied with the Policy when it paid Plaintiff the full appraisal award. The Court "cannot fault the insurer for complying with the terms of its insurance contract by participating in the appraisal process and paying in a timely manner." *Federated Nat'l Ins. Co. v. Esposito*, 937 So. 2d 199, 201 (Fla. 4th DCA 2006) (holding insured was not entitled to attorney's fees when insurer complied with appraisal process provided for in the insurance contract). To do so would "dissuade insurers from complying with the terms of their own agreements" and undermine the intent and purpose of the fee-shifting rule. *Id.* at 201–02. Plaintiff Niemis is therefore not entitled to attorney's fees.

**CONCLUSION**

The Court grants Defendant CCC's Motion for Judgment on the Pleadings, Dkt. 47.[4] The clerk is directed to enter judgment against Plaintiff and in favor of

[4] Plaintiff requests the opportunity to amend his claims in the event the Court grants Defendant CCC's motion. But there is no set of facts that could entitle Plaintiff to relief on the tortious interference claim because there was never any breach of the insurance policy. And there is no set of facts that could entitle Plaintiff to relief on the third-party beneficiary claim because the Services Agreement expressly disclaims any third-party beneficiaries. Plaintiff's request is therefore denied. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (holding that futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal).

Defendant CCC. Plaintiff's Motion to Compel Discovery Responses, Dkt. 53, is denied as moot. The clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on August 10, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record